Deborah A. DANNER, Appellant,

v.

DIVISION OF FAMILY SERVICES, Respondent.

No. WD 41168.

Missouri Court of Appeals,
Western District.

June 20, 1989.

Edward M. Berg, Columbia, for appellant.

Linda Ray McKenna, Jefferson City, for respondent.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

FENNER, Judge.

Deborah Danner appeals from the judgment of the trial court affirming the finding of the Division of Family Services (hereinafter DFS) that an overpayment of Aid to Families with Dependent Children (hereinafter AFDC) benefits had been received by her for the months of August, 1986 through December, 1986 and March, 1987.

Deborah Danner was approved in August, 1986, to receive benefits from the AFDC program. The approval was based upon Danner's "zero income" and she received the maximum monthly grant of $224.00. Danner and her child received the AFDC benefits from August, 1986 through December, 1986 and March, 1987.

In August, 1986, Ms. Danner was accepted as a graduate student at the University of Missouri–Columbia and began class August 25. A Notice of Loan Guarantee and Disclosure Statement showed that on October 11, 1986 Danner was approved for a loan of $2,500.00 and that the estimated disbursement date would be on October 20, 1986. The original estimated disbursement date on the notice was crossed out and the date of November 14, 1986 was written in. After a guaranteed fee and organization fee were subtracted from the loan, the amount disbursed to the University on behalf of Danner was $2,318.75. The University then deducted tuition, mandatory fees and other costs, leaving the sum of $1,263.24 which was paid to Danner on December 2, 1986.

According to her testimony at the hearing before the director of the Missouri Division of Family Services, Danner stated that following her application for the loan she spoke to her DFS caseworker, Ruth Hall, regarding the effect the loan would have on her AFDC benefits. It was Danner's belief that the loan funds would be viewed by DFS as income only for the month received and for the remaining months in the semester. On December 4, 1986, Danner reported the receipt of the loan to DFS.

Upon report of the receipt of this loan by Danner, the DFS caseworker, Ms. Browning, requested a policy clearance to determine how the amount of the loan should be budgeted because there was some discrepancy as to when Danner actually received the loan or when the loan was disbursed and therefore became available to Danner. The policy clearance as ruled upon by the Program and Policy Unit of DFS determined that the amount should be budgeted for the time period which the loan covered, August through December, 1986, regardless of when the loan was actually received. At the hearing before the Director of the Missouri State Division of Family Services, Ms. Browning asserted that DFS contended since Ms. Danner was approved for the loan in October, the latest Danner should have reported the approval would have been in the November Monthly Status Report form. Browning also stated that the first report DFS had of the loan to Danner was received in December and that whenever Danner actually picked up the check, December, November or October, that Danner knew in October at the latest that the loan had been approved.

In determining the monthly budget amount, DFS deducted $860.00 (tuition and activity fees) from the guaranteed student loan amount of $2,318.75 to arrive at a balance of $1,458.75. The $1,458.75 was then divided by five, the number of months, August through December, 1986, in the fall semester. By using this procedure DFS found that Ms. Danner had $291.75 available income for the months of August through December, which exceeded the AFDC benefit allowed of $224.00, thus making Danner ineligible for benefits. DFS then multiplied the benefit amount of $224.00 by five months and determines that an overpayment of $1,120.00 had been made which must be reimbursed.

By way of clarification, it should be noted that Danner disputes the $1,458.75 figure arrived at by DFS in calculating the amount of available income. She claims the correct amount should have been $1,263.24, the amount which she actually obtained from the University. Danner

stated at the hearing that the University deducted whatever she owed it, for anything, not just current tuition and fees, from the $2,318.75 amount received, before she was issued her portion of the loan. There is nothing in the record to explain what accounts for the difference in these figures. However, pursuant to Danner's own testimony, amounts were deducted by the University for things other than tuition and fees owed by Danner to the University. Therefore, because the $860.00, which the University claims to be the amount of tuition and fees is not disputed, for purposes of this appeal it will be assumed that the DFS figure of $1,458.75 available income is correct.

A second overpayment assessed by DFS against Danner involved the payment of benefits in March of 1987, which occurred when Ms. Danner became employed in February, 1987. It is normal operating procedure of DFS that ineligibility begins the month after the recipient begins work. Ms. Danner telephoned her DFS caseworker after beginning work and timely filed her March Monthly Status Report on March 6, 1987. Although timely reported, the notice was received and processed by DFS too late to stop the check from being sent to Ms. Danner. The March check was not refused or returned by Ms. Danner. DFS added the March, 1987 overpayment of $224.00 to the amount of overpayment from August through December, 1986, of $1,120.00 for a total claim against Danner of $1,344.00.

█ Because of the importance of the issue raised in Point II, it will be taken up first as the outcome necessarily dictates whether her other points on appeal need be addressed. In Point II Danner asserts that the trial court erred in affirming the decision of DFS that the proceeds remaining from her student loan, after education expenses were deducted, was available income to be considered in determining eligibility for AFDC benefits. Danner maintains that the Missouri policy of considering loans as income for AFDC purposes is inconsistent with the purpose of federal law.

Initially, it is noted that "[r]eview of 'the action and decision of the director of the [State Division of Family Services]' is 'in accordance with the provisions of § 536.140, RSMo. § 208.100.5.'" *Covington v. Missouri State Division, etc.*, 603 S.W.2d 103, 104 (Mo.App.1980); *Pummill v. Missouri Div. of Family Services*, 674 S.W.2d 647, 648 (Mo.App.1984). The scope of review for this court pursuant to § 536.140.2, RSMo 1986, extends to a determination of whether the action of the agency is, among other things, in excess of the statutory authority or jurisdiction of the agency, is unsupported by competent and substantial evidence upon the whole record, or is, for any other reason, unauthorized by law. *Id.* Decisions rendered by an administrative body are presumed to be correct. *White v. Division of Family Services*, 634 S.W.2d 258, 260 (Mo.App.1982). Further, on review of an agency decision, this court is obliged to examine the record in the light most favorable to the findings of the agency. *Washington v. Sayad*, 676 S.W.2d 27, 30 (Mo.App.1984).

By way of background, the AFDC program established by the Social Security Act of 1935 is a federally funded program designed to assist the States in creating programs to care for needy children. In order to participate in this program, each State must submit a plan to carry out the federal mandate and such plan must be approved by the Department of Health and Human Services (HHS). 42 U.S.C. § 601 (1987). A broad regulatory scheme has been promulgated by the federal government on which the State must build its program. The State is given a great deal of discretion to establish eligibility and benefit amounts within the federal statutory and regulatory framework. The State is free to regulate or to make policy so long as it is not in direct violation of federal policy either explicit or implicit. *Cunningham v. Toan*, 728 F.2d 1101 (8th Cir.1984).

42 U.S.C. § 602(a)(7) states that all income and resources of the child or relative claiming AFDC benefits should be considered by the State agency in determining the need of the child or relative claiming

such aid. 45 C.F.R. § 233.20 is the corresponding regulation, which specifies that a State plan for AFDC must "[p]rovide that, in determining the availability of income and resources, the following will not be considered as income: * * * (b) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for *current living costs.*" 45 C.F.R. 233.20(a)(3)(iv)(B) and "[p]rovide that in determining eligibility for public assistance and the amount of the assistance payment, the following will be disregarded as income and resources: * * * (d) Any grant or loan to any *undergraduate* student for educational purposes made or insured under any programs administered by the Commissioner of Education" 45 C.F.R. 233.-20(a)(4)(ii)(d). (Emphasis added). The Missouri DFS has reiterated the federal policy as is indicated by the Income Maintenance Manual (IMM), Chapter 1, § III, wherein it provides, in part, that the following will be excluded as income:

> "[l]oans or grants to an *undergraduate* student for educational purposes made or insured under any program administered by the Commissioner of Education. This would include the Basic Educational Opportunity Grants Program (BEOG), Supplemental Educational Opportunity Grants (SEOG), National Direct Student Loans (NDSL), and Guaranteed Student Loans (GSL), and PELL Grants."

It should be noted that this Court is aware that the IMM has been found to have no legal controlling force in *Missouri State Div. of Family Services v. Barclay,* 705 S.W.2d 518 (Mo.App.1985). This was due to the failure of the DFS to follow required procedures for publication and filing on rules and regulations pursuant to § 536.010(4), RSMo 1986. However, for purposes of the present appeal, the IMM is merely being referred to for the limited purpose of showing that the policy contained therein is that which the DFS follows to determine the amount of benefits to which a recipient is entitled.

Contrary to Danner's assertion, the Missouri policy does not run afoul of the federal policy. Although Danner's student loan may not appropriately be considered "income" to her under 42 U.S.C. § 602(a)(7) or 45 C.F.R. § 233.20(a)(3)(ii)(c), the further conclusion that the loan is not a resource cannot be reached. There is nothing in the language of 42 U.S.C. § 602 or 45 C.F.R. 233.20 that excludes *all* loans of *whatever* type from consideration in determining eligibility to receive AFDC benefits. On the contrary, 45 C.F.R. 233.20(a)(4)(ii)(d) specifically excludes loans to *undergraduate* students for educational expenses. Further, as previously indicated, 45 C.F.R. 233.-20(a)(3)(iv)(B) in pertinent part excludes from consideration loans and grants used under conditions that preclude their use for current living costs in determining eligibility for AFDC benefits. Therefore, as is evidenced by the federal regulations, the state of Missouri cannot be said to be in derogation of federal policy for failure to exclude Danner's graduate loan from consideration. Rather, as the regulation indicates, the federal policy is to exclude loans to undergraduate students so that what the DFS has done, as it is allowed to do, is within the broad federal regulatory framework. Clearly, the remainder of the graduate loan, following deductions for mandatory tuition and fees, left an available resource which Danner could use for current living costs. Because consideration of graduate student loan proceeds, to the extent that they are a resource and available for current living costs, is appropriate and is not violative of federal policy, Danner's point II is denied.

■ In point I Danner maintains that it was error for the trial court to affirm the decision of the DFS that she had $1,435.54 remaining from her student loan to be considered available income from which the amount of AFDC benefits would be determined. She claims that the trial court should have reversed the decision because the only deductions allowed from the loan amount were for tuition and mandatory fees. The actual remainder amount issued by the University to Danner was $1,263.24, which is the amount she claims should have been used by the DFS in determining her eligibility for AFDC benefits. Danner further argues that from this $1,263.24 figure

DFS should have subtracted, in addition to tuition and fees, the costs of books, supplies, transportation to and from school and day care costs in arriving at an available income figure. It is Danner's position that limiting the education deduction to tuition and mandatory fees is not in compliance with the intent of the AFDC and is an arbitrary, capricious and unrealistic policy.

This court agrees with Danner. If the loan fund more than covers the cost of educational expenses, the excess loan money is available for current living costs. However, to the extent that the loan is obtained and used to pay educational expenses, it is a loan obtained and used under conditions that preclude its use for current living expenses and which is not available for consideration as a resource under a State plan for AFDC. 45 C.F.R. § 233.20(a)(3)(iv)(B).

The DFS interpretation seems to presume that only tuition and mandatory fees are educational expenses and deems the remaining portion of the student loan available even though it is used for educational purposes. This approach ignores reality and is contrary to the Code of Federal Regulations.

As previously set forth, 45 C.F.R. 233.-20(a)(3)(iv)(B) excludes from consideration as income loans used under conditions that preclude their use for current living costs. It is logical to interpret this language to mean that the portion of a loan actually used for items such as tuition, books, fees, equipment and child care services necessary for school attendance shall not be considered as a resource available for current living cost. However, it is noted that this is not to suggest that such things as parking violations or other such fines or penalties assessed by the University and not associated with the cost of education be included in the category of educational expenses.

The proof in each case will require individual inquiry by DFS and that the AFDC recipient prove by reasonable methods, e.g., receipts, the costs associated with education.

Because the trial court erred in affirming the decision of DFS to include only tuition and fees in determining eligibility for AFDC benefits, this cause must be remanded to the agency. On remand Danner must prove her other, if any, necessary educational expenses to which the loan proceeds were applied. DFS must then reevaluate Danner's eligibility to receive AFDC benefits taking into consideration and disregarding these expenses.

In point III Danner alleges error in the trial court's decision to affirm the DFS determination that the student loan funds received by Danner could be prorated for AFDC budgeting to the semester months of August through December. She claims that this determination should have been reversed because the Federal law requires income for AFDC budgeting to be considered only in the month in which the income is actually available to the recipient. Danner asserts that the loan funds were not available to her until December, 1986, when she went to the University to obtain the funds.

45 C.F.R. 233.20(a)(3)(D) provides that income and resources are considered available for current use both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

Danner applied for a loan to cover her educational expenses for the fall semester, 1986. DFS maintained at the hearing and again in their brief that the loan proceeds were not actually available to Danner until October, but through Danner's manipulations were not received until December. There is evidence in the record that the loan was approved sometime in October, 1986. Danner admitted at the hearing that she could have picked up the loan check on October 20, 1986, but that she waited until December because she thought her AFDC income would only be reduced from that date.

The record makes clear that the appropriate month from which Danner's loan funds could be considered available was not December as she maintains nor August as

DFS maintains. Rather it appears that the loan was available to Danner and that she had a legal right to the proceeds in October. Therefore, in addition to the reasons set forth in point II, this cause must be remanded for a recalculation of the amount, if any, that Danner must repay to DFS for the months of October through December, 1986, the time period when the proceeds were actually available to her.

Finally, it is unnecessary to discuss the merits of Danner's point IV as the DFS has conceded that an error in the budget was made by neglecting to make an allowance for child care costs for the month of March, 1987. The cause will be remanded to the DFS for the additional purpose of recalculating a budget for Danner that takes this amount into consideration.

For the reasons set forth in points II, III and IV, this case will be remanded to the DFS for recalculation of AFDC benefits in accordance with this opinion.

All concur.