R. G. Johnson Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued February 5, 1980, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,

ROGERS, BLATT, CRAIG and WILLIAMS, JR., Judges MENCER and MACPHAIL did not participate.

*Elliot A. Strokoff*, of *Handler and Gerber, P.C.*, for petitioner.

*Paul S. Roeder*, Deputy Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., March 13, 1980:

Petitioner brings this appeal from the denial of a petition for refund from a sales and use tax assessment by the Department of Revenue. We reverse and remand for computation of the refund due.

Petitioner is in the business of sinking mine shafts and driving slopes for bituminous mining companies. From September 23, 1974, to September 14, 1977, petitioner paid sales and use taxes of $92,028.16 on the purchase and use of machinery, equipment, parts thereof, and supplies used and consumed directly in the sinking of 12 bituminous mine shafts and the driving of one bituminous mine slope. The mine shafts, which are vertical openings from the surface of the land down several hundred feet through hard rock, were necessary in order to provide adequate ventilation in the bituminous coal mines running for several

miles underground. Bituminous coal mining companies called upon petitioner to sink these shafts according to specifications approved by the Pennsylvania Department of Environmental Resources, Bureau of Bituminous Mine Safety (DER) and the Federal Mine Enforcement and Safety Administration (MESA). Petitioner drove the slope, which is an incline opening running between subterranean soft coal seams and providing access to the deeper seam, in a similar drilling and extraction pattern of operations as was used in shaft sinking. Both DER and MESA continuously monitored the activities of the petitioner to assure compliance with state and federal regulations.

On September 1, 1977, petitioner filed a petition for refund for the amount of tax paid for the aforementioned period, in accordance with the exclusion derived from "mining" being defined as "manufacturing" in Section 201 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, 72 P.S. §7201.[1] The petition was denied by the Sales Tax Board of Review, and that order was sustained by the Board of Finance and Revenue. This appeal followed.

---

[1] The current definition is found at Section 201(c) and 201 (c) (3) of the Code, 72 P.S. §7201(c) and 72 P.S. §7201(c)(3) and is as follows:

(c) 'Manufacture.' The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not limited to—

. . . .

(3) Refining, blasting, exploring, mining and quarrying for, or otherwise extracting from the earth or from waste or stock piles or from pits or banks any natural resources, minerals and mineral aggregates including blast furnace slag. . . .

Both in the brief filed and at oral argument before this Court, it was conceded by counsel for the respondent that if the operator of the bituminous mine had performed the identical activity performed by the petitioner, the amount of sales and use taxes paid for the machinery, equipment, and supplies needed to sink shafts and slopes would be excluded as part of the mining operation. Thus, the only distinguishing factor here is that the owner has contracted petitioner to perform a task which would otherwise need to be performed by him as an essential step in his operation of finally extracting coal from the mine. That factor is not sufficient to convert petitioner's business activities from mining to another, non-excluded form of activity. It is the nature of the operation and not the identity of the operator that is controlling.

Our decision in *Tyger and Karl Complete Water Systems Co. v. Commonwealth*, 5 Pa. Commonwealth Ct. 154 (1972), is instructive here. In *Tyger, id.*, this Court held water well drilling to be included under the statutory mining exclusion from use tax liability because it was an activity sufficiently similar to refining, exploring, mining, or quarrying to be included in the statutory phrase "or otherwise extracting from the earth . . . any natural resources. . . ." The company's activities consisted of an exploring and drilling down to the water on the customer's premises which enabled the customer to extract water from the earth's subsurface. The similarity between these activities and those of the case at bar is clear, and in the case at bar there is no question that the material ultimately extracted by the petitioner's customer, namely coal, is a natural resource.

We must conclude then that the Board of Finance and Revenue erred in sustaining the tax assessment and refusing the petition for refund. Accordingly, we will enter the following

ORDER

AND Now, March 13, 1980, unless exceptions are filed within thirty (30) days of the date hereof the appeal of petitioner R. G. Johnson Company from the order of the Board of Finance and Revenue in sustaining the order of the Sales Tax Board of Review imposing sales and use taxes in the amount of $92,028.16 is sustained. The order of the Board of Finance and Revenue dated June 28, 1978 and mailed June 30, 1978 is set aside. The case is remanded for computation of the amount of refund due the petitioner.

President Judge BOWMAN did not participate in the decision in this case.