Westinghouse Electric Corporation, Appellant *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued June 4, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*Lloyd R. Persun, Shearer, Mette & Woodside,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRAIG, July 21, 1980:

Westinghouse Electric Corporation (taxpayer) appeals from an order of the Board of Finance and Revenue denying $860.65 in refunds for use taxes paid under the Tax Reform Code (Code)[1] on the purchase

---

[1] Section 202 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 16, *as amended,* 72 P.S. §7202, imposes upon the retail sale and the use of tangible personal property or services, a tax of 6% of the purchase price. At issue here on appeal are the following amounts paid by taxpayer directly to the Commonwealth: (1) $796.41 in use tax on art work, photographs, film

and use of art work, source materials and photography equipment.

Taxpayer claims entitlement to the refunds on the basis that the use of these items, being directly and integrally related to its printing operation, are uses which are excluded from tax under the manufacturing exclusion stated in Section 2016(4)(B)(i) of the Code, 72 P.S. §7201(o)(4)(B)(i), which provides in pertinent part that:

That the term 'use' shall not include—

....

(b) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclause[s] (2) ... of this clause directly in any of the operations of—

(i) The manufacture of personal property;

"Manufacture" is defined in Section 201(c) of the Code, 72 P.S. §7201(c), and specifically includes "printing" in Section 201(c)(2). Subclause (2) of Section 201(o) will be considered below.

## FINDINGS OF FACT

As findings of fact, for the purpose of our de novo review, we hereby adopt in full the detailed stipulation by the parties, which constitutes the entire record of facts. The stipulation hereby adopted, consisting of thirty paragraphs with referenced exhibits A through K inclusive, is set forth in full in the record.

Because of the comprehensive nature of the stipulation, to restate it here at length would expand the volume of this decision unduly. The key factual

---

negatives and materials prepared by independent art studios (Hereinafter "art work and source materials"); (2) $64.24 tax paid on taxpayer's use of photography equipment.

elements are summarized in the discussion which follows.

## DISCUSSION

Taxpayer is a Pennsylvania corporation, with its principal office located in the Westinghouse Building, Pittsburgh, Pennsylvania. Taxpayer manufactures, sells and services various electrical products and supplies for the general public and industry. As part of its Pittsburgh facility, taxpayer operates a photo-center and a printing facility. The photo-center is equipped for photographic studio work, development of black and white and color films, and print-making and enlarging. More that 55,000 photographs were developed at the photo-center during 1971, the tax year at issue.

Taxpayer's printing operation (located on the 12th floor of the Westinghouse Building with a satellite facility in the Trafford, Pennsylvania plant) is also quite extensive. The printing division prints sales brochures, manuals and reports for use by taxpayer's sales personnel in promotion and product advertising, and also stationery, books, pricing information, buying data, business forms and meter paper for taxpayer's electrical products, including electrocardiographs and lie detector recording meters. Three hundred fifty employees work in the printing division as typesetters, composers, proofreaders and pressmen.

There are two categories of items for which the refunds are claimed. First are the items of art work and resource materials which are prepared for taxpayer by independent art studios and commercial developers, which then are used by taxpayer in its printing division for reproduction in sales manuals and reports. Second are those items of art work and resource materials which are prepared for taxpayer by like art studios but are passed on by taxpayer to out-

side independent printers, to be reproduced as the graphic portions of similar manuals and brochures.[2]

Being bound by the parties' stipulation as to the nature of the use of the materials, the tax regulations and the limited case law, our conclusion is that taxpayer is entitled to a refund for those uses and items applied within its inhouse printing operation. As to that art work and source material which taxpayer receives from art studios and merely transfers to outside printers for printing, taxpayer is not entitled to the use tax refund.

### Inhouse Printing

The Commonwealth first argues that taxpayer is not entitled to any refund because taxpayer is not engaged in the printing business. Section 201(c) defines "manufacture" (which includes printing, as noted above) as operations "engaged in as a business." The Commonwealth points to the stipulation itself as an admission by taxpayer that it is in the business of manufacturing electrical parts and not engaged in printing "as a business". However, there is nothing in

---

[2] The art studio prepares "camera ready art work" for the graphic portions of taxpayer's manuals and brochures. The studios retouch photographs taken by taxpayer's photo-center, assemble separate photographs into composite mats and prepare renderings, drawings and diagrams of the equipment. The renderings and drawings are prepared by following diagrams, photographs and other instructions provided by taxpayer.

Taxpayer has also raised the contention that it is not liable for any tax because it has purchased nontaxable services similar to those listed under 61 Pa. Code §31.6, which include: Services rendered by the learned professions, barber services, extermination and janitorial services.

Although the creation of the art work necessarily entails the application of services by skilled professionals, taxpayer here has purchased not merely services, but the tangible products of their efforts—art work, property prepared for reproduction into printed manuals and brochures.

the Code or the regulations which indicates that a taxpayer must be solely engaged in the printing business to take advantage of the exclusion. Further, the stipulation clearly shows that taxpayer's inhouse printing operation is interrelated with its manufacture of electrical parts. Taxpayer certainly is not involved in its extensive printing operation as a hobby or as a charitable endeavor; its printing is part of its engaging in business.

In support of its contention that the art work and source materials are tangible personal property used "directly" in "manufacture", taxpayer relies on the definition of "manufacture" in Section 201(c), which provides in subsection (1) that the term manufacture shall include, "[e]very operation commencing with the first production stage and ending with the completion of personal property."

Taxpayer asserts that the art work and source materials are used in the first production stage of the printing operation.

Taxpayer's printing operation involves a photographic and chemical process for making the printing plates. Taxpayer receives the art work from an art studio. This "camera ready art work" is then photographed at taxpayer's photo-center; the film is developed; the film negative, by application of a chemical treatment, is processed into a printing plate, the carrier of the image; the plate is inked, run, and the results are the printed graphic materials.

The Commonwealth contends that the taxpayer's use of the art work and resources is preliminary to the printing operation and therefore these are not items used "directly" in the production of printed matter. The Commonwealth points to the fact that the art work does not touch the printing press. We do not believe the Commonwealth's analysis is compelling.

Although the stipulation does not contain a description of how the *words* of the brochures and manuals come to be "printed", the stipulation does note that taxpayer employs numerous typesetters. Assuming that the typesetting of words (by today's photographic printing processes as well as by the letterpress and molded plate methods of yesterday) are directly part of the printing process—as it certainly is—then, the equivalent setting-up of the nonverbal graphic pages of the material is just as clearly part of the printing process.

The printing regulations at 61 Pa. Code §32.36 incorporate by reference the regulations generally applicable to manufacturing, which provide guidelines for determining whether property is directly used in a manufacturing operation, including (1) the physical proximity of the property to the production process; (2) the proximity of the time of use of the property to time of use of other property in the production process; and (3) the active causal relationship between the use of the property and the production of the product, 61 Pa. Code §32.32(a)(1).[3]

The crucial element here is that there is an "active causal relationship" between the use of the "camera ready art work" and the "production" or printing of the product. The art work is in fact the image to be printed—the material without which there would simply be no printing. Only by the photographic conversion of the art work to the negative to the plate can the printed image result. All the essential steps, from the preparation of the art work to the photograph to the film development and the making of the printing plates, directly constitute the printing process.

---

[3] Revenue regulations have the force and effect of law. *Charles Riebe Construction Co. v. Commonwealth,* 17 Pa. Commonwealth Ct. 508, 333 A.2d 226 (1975).

Therefore, we hold that the board erred as a matter of law in denying taxpayer's claim as to inhouse printing. Taxpayer is entitled to a use tax refund on those items of art work and source material and photographic equipment and supplies which taxpayer has acquired and used solely in and for its printing operation.

### Outside Independent Printing

Taxpayer also claims a $188.00 refund for taxes paid on the use of art work and source materials purchased from an independent art studio and then transferred to an outside company for printing.

Taxpayer claims entitlement to the manufacturing exclusion for this art work, asserting that the ultimate use of the items and not the identity of the printer dictates the availability of the manufacturing/printing exclusion under the same Section 201(o)(4)(B)(i) of the Code as pertained to the inhouse printing.[4]

Taxpayer relies on our recent decision in *R. G. Johnson Co. v. Commonwealth*, 50 Pa. Commonwealth Ct. 111, 411 A.2d 1315 (1980) for this proposition.

---

[4] To consider this claim, we must again quote Section 201(o)(4)(B)(i) with particular note of a reference therein to subclause (2):

That the term "use shall not include—

....

(B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclause[s] (2) ... of this clause directly in any of the operations of—

(i) The manufacture of personal property....

Subclause (2) describes the following as a use subject to tax:

(2) The obtaining by a purchaser of the service of printing or imprinting of tangible personal property when such purchaser furnishes, either directly or indirectly, the articles used in the printing or imprinting.

In *R. G. Johnson Co., supra*, petitioner, who was in the business of sinking mine shafts, and driving slopes for bituminous mining companies, filed for a use tax refund under the mining/manufacturing exclusion of Section 201(c)(3), 72 P.S. §7201(c)(3), of the Code. The parties conceded that had the mine operator himself performed the activities petitioner had undertaken, the sales and use taxes paid for the machinery and supplies needed to sink the shafts and slopes would have been excluded as part of the mining operation. However, it was in the context of determining whether the process was in fact a "manufacturing" operation that the court noted, "the nature of the operation and not the identity of the operator ... is controlling." The question of who was entitled to the exclusion was not at issue.

Taxpayer's claim, that subclause (2) of Section 201(o)(4)(B)(i) "makes clear" that taxpayer is entitled to the exclusion, is misplaced because that subclause describes the purchase of printing as taxable.[5] The only event which is excluded by the statute's manufacturing exclusion is the "use or consumption" in manufacturing, i.e., printing, and, as to the outside work, that excluded event inures to the benefit of the outside printer, not to taxpayer. This reading of the statute confirms the validity of 61 Pa. Code §32.32 which excludes purchases for manufacturing "by a person engaged in the business of manufacturing" if the property is "used directly by him" in the manufacturing operation.

Because the taxpayer, as to the outside printing, did not purchase the art work and source materials for

---

[5] Subclause (2) is quoted at n.4, *supra*.

use in its own printing operation,[6] the excluded use was never attributable to this taxpayer.

Therefore, we affirm the board's decision and deny taxpayer's refund on the art work and material purchased by taxpayer from independent vendors and not used by taxpayer in its own printing operation.

## CONCLUSIONS OF LAW

1. Taxpayer is engaged in printing as a business which constitutes manufacturing under the Code, 72 P.S. §7201(c).

2. Taxpayer's use of art work, source materials and photographic equipment in its own printing business is excluded from tax because those purchases are used directly in a manufacturing operation, by reason of their proximity to, and active causal relationship with, the printing process.

3. The board therefore erred in refusing taxpayer's refund request with respect to the use of the art work, source materials and photographic equipment in taxpayer's own printing business, and the appeal of Westinghouse Electric Corporation should be sustained to the extent of allowing a refund of $672.65 for such matters.

4. Taxpayer is not engaged in the printing business with respect to those brochures and manuals which are printed by outside independent printers.

5. The use to which the manufacturing exclusion is applicable is the "use or consumption" of tangible personal property in manufacturing, i.e., printing by the taxpayer.

---

[6] Taxpayer's brief, including the statement of questions, does not claim that the printing purchased from outside printers should be regarded as used or consumed in its electrical equipment manufacturing activity.

6. To the extent that the taxpayer did not itself use art work and source materials in an excluded activity, taxpayer is not entitled to the use tax exclusion.

7. The board therefore correctly refused the $188.00 refund request on .art work and source material which taxpayer purchased and transferred to outside printers for printing, and the appeal of Westinghouse Electric Corporation is therefore dismissed as to those claims.

AMENDED ORDER

AND Now, this 30th day of July, 1980, the order herein dated July 21, 1980 is amended to read, in its entirety, as follows: The appeal of Westinghouse Electric Company from the decision of the Board of Finance and Revenue is reversed in part, as to allowing a refund of $672.65 and is affirmed in part, as to refusing a refund of $188.00. Unless exceptions are filed within thirty (30) days of the date hereof, judgment is hereby entered in favor of Westinghouse Electric Company in the amount of $672.65.