Commonwealth of Pennsylvania, Appellant v. A. J. Wood Research Company of Pennsylvania, t/a Computer Letters, Inc., Appellee.

Commonwealth of Pennsylvania, Appellant v. A. J. Wood Research Company of Pennsylvania, t/a Computer Letters, Inc., Appellee.

226

Argued December 9, 1980, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three. Reargued June 2, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, WILLIAMS, JR., CRAIG and MACPHAIL. Judge PALLADINO did not participate.

*Phyllis E. Feibus*, Assistant Attorney General, for appellant.

*Michael H. Krekstein, Krekstein, Shapiro, Bressler & Wolfson*, for appellee.

*Milton A. Feldman, P.C., Clark, Ladner, Fortenbaugh and Young*, for Amicus Curiae, Graphic Arts Association of Delaware Valley, Inc.

*William P. Thorn, Wolf, Block, Schorr and Solis-Cohen*, for Amicus Curiae, Communication Concepts, Inc.

OPINION BY JUDGE CRAIG, June 29, 1981:

In these two consolidated appeals by the Commonwealth from a sales tax reassessment and use tax refund granted by the Board of Finance and Revenue (Board) in favor of taxpayer A. J. Wood Research Company of Pennsylvania, trading as Computer Letters, Inc., the central common issue is

> Does the taxpayer's use of computerized word processing equipment to produce a large number of letters and other materials, for distribution as direct mail advertising, fall within the printing exclusion of the Tax Reform Code of 1971 (Tax Code)?[1]

Tax Code §201(o)(4)(B)(i), as to use tax, excludes from tax the use of property in the "manufacture" of personal property, and Tax Code §201(c)(2) defines manufacturing to include

> (2) The publishing of books, newspapers, magazines and other periodicals and printing.

The Board held that the exclusion was applicable to the taxpayer's business activity.

From the stipulations submitted by the parties, and from the testimony and exhibits submitted in the course of evidentiary hearings, we make the following:

## Findings of Fact

1. With respect to the taxpayer's business activity and product, and the method and equipment by which that product is produced, we hereby adopt in full the detailed initial stipulation submitted by the parties, consisting of thirteen paragraphs. (The key

---

[1] Sections 201(c)(2), 201(o)(4)(B)(i) of the Act of March 4, 1971, P.L. 6, 72 P.S. §§7201(c)(2), 7201(o)(4)(B)(i). In considering this issue, we are indebted, not only to counsel for the parties, but also to amicus curiae Graphic Arts Association of Delaware Valley, Inc. and Communication Concepts, Inc., whose counsel have presented thoughtful briefs on the two sides of the question.

factual elements are summarized in the discussion below.)

2. The activity of printing consists in fact of the reproduction of multiple copies of graphic elements as a business. Beyond such basics, the opinions of experts, as well as dictionary and encyclopedic sources, differ irreconcilably as to the technical, trade and popular definitions of printing.

3. To achieve the reproduction of multiple copies, as noted above, printing uses an image carrier of some nature, in which the graphic elements to be reproduced are preassembled. There is no agreement among authoritative sources as to the nature, or limits upon the nature, of such an image carrier; types of image carriers include, but are not limited to, those which function by physical or mechanical or electronic means.

4. Printing involves reproduction with substantially identical results, but some printing products, such as the personalized children's books patented as products of "printing", also involve the insertion of individualized references within a particular copy, with the remainder of the resulting material being identical with all other copies.

5. The reproduction resulting from the image, carrier may be produced a page at a time, as upon a flat press, or may involve impact transfer or other means of transfer which produces, at one instant, a lesser component, such as one color at a time, one line at a time or less than one line at a time.

### Discussion

The Commonwealth urges that we resolve the issue primarily by contrasting the technology of the taxpayer's process with the technology of those other processes traditionally accepted as printing, *i.e.,* letterpress, offset printing and the like.

From stipulations and expert testimony, the record informs us that the taxpayer, as a business, produces and distributes large numbers of direct mail advertising materials by using what we can generically call word-processing equipment, the I.B.M. No. 1403 "Printer" in the taxpayer's case. According to stipulation, a computer, in which the contents of the letters and also the mailing list of addresses are stored, transmits one line at a time to the "Printer", which transfers the characters or marks to paper being fed in a continuous roll. The equipment accomplishes the transfer by using a "Train" of 240 characters or symbols revolving at a high rate of speed in a continuous chain, with a ribbon between the train and the paper, so that when the computer electronically actuates certain of 132 "Hammers" behind the paper, the predesignated characters appear on the paper. The taxpayer's equipment produces two letters, character by character and line by line, at a time.

The crux of the Commonwealth's technically-based position is that this process is not printing because it does not involve an image carrier, such as a plate or web as used in letterpress or offset printing, on which the information components (*e.g.,* characters) have been *physically* pre-assembled in relation to each other before the equipment places the graphic result on paper, so that a mass of information components are applied to the paper medium simultaneously, *e.g.,* a page at a time.

The Commonwealth further contends that, in contrast, processes like those of the taxpayer conceptually resemble high-speed typewriting, and that typewriting was held not to constitute printing in *Sunday v. Hagenbuch,* 18 C. 540, 5 D. 542 (1896), which dismissed a bill in equity because, being typewritten, it was not deemed to be printed as required by rule of court.

However, the Board and we are saved from floundering in today's rising seas of technology by the Commonwealth's own definition of printing for use tax purposes, set forth in 61 Pa. Code §32.1, which reads

*Printing*—

The performance of those operations, *engaged in as a business,* which are necessarily and directly related to the *production* of printed matter *by means of mechnical reproduction and transfer* of letters, *characters,* figures, illustrations, or designs *onto paper,* cloth, metal, plastic or other material. (Emphasis supplied.)[2]

In the same regulatory section, "printed matter" is defined as including envelopes and advertising, among other items. A regulation has the same legal force and effect as a statute. *Charles Riebe Construction Company v. Commonwealth,* 17 Pa. Commonwealth Ct. 508, 512, 333 A.2d 226, 228 (1975).

Inescapably, we must conclude that the taxpayer's activities at issue fall within the regulation's definition because taxpayer, as a business, is engaged in the production of reproduced matter by mechanical transfer of characters onto paper.

Although we lack authoritative history as to the legislative policy behind the printing exclusion, we note that the statutory exclusion begins with the key word "publishing". Whether we read the word "printing" at the end of that exclusion as standing by itself or subsumed, along with books and periodicals, as a further reference to matter which is published, we believe that the Department of Revenue made a reason-

_____

[2] As of January 28, 1981, the Department of Revenue amended this regulation by adopting new wording expressly describing the amended definition as constituting the department's position in this case. Of course, the amended version cannot govern our decision in the matter.

able administrative interpretation when it promulgated this regulation, defining "printing" to mean information reproduction conducted as a business. Thus we conclude that the reasonable and workable understanding of the exclusion is that it is intended to embrace businesses involving the publication or distribution of reproduced information in quantity.

Such an understanding appears to violate no conceivable purpose of the exclusion, whether the legislative intention might have been to stimulate commercial fields of enterprise or to support the distribution of information to a literate society, or both.

On the other hand, we cannot discern a reasonable relationship between a purely technological distinction and a sound legislative purpose. The Commonwealth has offered no cogent explanation as to why the legislature might wish the favorable light of exclusion to shine upon one technological approach to reproduction and not upon another.

We do not reject the Commonwealth's contention that some "image carrier" may be essential to printing because reason suggests that, regardless of technological nuances, to reproduce a given set of information units repetitively, that set must be preassembled in some fixed manner to achieve that repetition. There is logic in the taxpayer's response that its process indeed depends upon an image carrier, although it is an electronic one rather than a physical one, in that the characters to be reproduced are preassembled electronically by the computer, rather than physically by a plate.

The law's concepts have sufficient vital capacity for growth to accommondate technological evolution. See *VanSciver v. Zoning Board of Adjustment*, 396 Pa. 646, 152 A.2d 717 (1959), in which the Pennsylvania Supreme Court felt compelled to interpret local permission for a "hand laundry" with flexibility suffi-

cient to embrace the coin-operated laundromat when it emerged in the marketplace. Similarly, our reference to the printing of an "image" in *Westinghouse Electric Corporation v. Board of Finance and Revenue*, 53 Pa. Commonwealth Ct. 116, 417 A.2d 800 (1980) cannot be read restrictively as to the technical nature of the process or carrier through which the printed image results.

Our affirmance of the Board here does not run afoul of the Commonwealth's contention, in terrorem, that classifying reproduction by word-processors as printing will mean that every office using word processing equipment or automatic typewriters (*e.g.* preparation of briefs by a law office) will benefit. No such result accrues because the exclusion applies only to the reproduction of printed matter as a business activity. That focus is the touchstone, not the particular type of word-processing mechanics or electronics. The parties and amicus curiae have edified us with interesting explanations of word-processing equipment, in addition to the I.B.M. Printer used by the taxpayer, such as ink-jet printing and laser beam printing, but the determinative distinctions do not reside therein.

The fact that the present process reproduces one or two characters or a line at a time (instead of a page at a time) is not determinative. In the record, we note at least one example of a process conventionally accepted as printing which applies one line at a time. (Indeed, visualization of the curved printing plate on a simple rotary press indicates, that as the impression is rolled on, a page is actually printed by lines, not all at once.)

Finally, the partial individualization of the direct mail advertising letters, as to specific addresses and by the computerized insertion of personal name references in the body of letters (familiar to most direct advertising recipients as they winnow their mail) does

not obviate the fact that multiplicity of reproduction is still what is essentially involved here. Parents are familar with the individualized children's books ("Me-Books"), currently published by the printing industry, which received attention in the record here.

In view of the result we have reached, we do not need to consider whether the taxpayer is engaged in manufacturing, apart from printing, in order to affirm the Board here.

With respect to the matters here contested, we make the following:

### Conclusions of Law

1. The Tax Code, as part of the manufacturing exclusion, excludes from sales and use tax the publishing of books, newspapers, magazines and other periodicals and printing.

2. The applicable regulations of the Pennsylvania Department of Revenue, at 61 Pa. Code §32.1, define printing as the performance of operations, engaged in as a business, necessarily and directly related to mechanical reproduction and tranfer of graphic elements onto paper or other material.

3. Taxpayer's activity at issue here does constitute operations, engaged in as a business, consisting of the mechanical reproduction and transfer of graphic elements onto paper, and therefore constitutes printing as defined by the foregoing regulation of the Commonwealth.

4. Taxpayer is entitled to the printing exclusion to the extent which has been allowed by decision of the Board.

5. The decision of the Board should be affirmed.

### ORDER IN 593 C.D. 1974

Now, June 29, 1981, the order of the Board of Finance and Revenue dated March 12, 1974, at Docket

234

No. RST-90, relieving appellee of use tax assessment in the amount of $21,066.68, plus interest, is affirmed, subject to exceptions pursuant to R.A.P. 1571.

ORDER IN 594 C.D. 1974

Now, June 29, 1981, the order of the Board of Finance and Revenue dated March 12, 1974, at Docket No. RST-91, granting appellee a refund in the nature of a credit of $9,889.40, is affirmed, subject to exceptions pursuant to R.A.P. 1571.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I view the taxpayer's use of computerized word processing equipment to be nothing more than high-speed typewriting and not printing. If this is so, then the taxpayer's operation does not fall within the printing exclusion of the Tax Reform Code of 1971,[1] no matter how inclusive a definition for printing has been promulgated in the Pennsylvania Code.

Judge ROGERS joins in this dissent.

[1] Section 201(c)(2) and (o)(4)(B)(i) of the Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(c)(2), (o)(4)(B)(i).