**SEI INVESTMENTS, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2005.

Decided Jan. 17, 2006.

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2606.

Patricia Carey Zucker, Harrisburg, for petitioner.

Ronald H. Skubecz, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

SEI Investments petitions for review of the order of the Board of Finance and Revenue, which denied its request for a refund of sales tax paid in connection with printing services rendered to SEI by ABS Canon. The issue on appeal is whether the printing activities conducted on SEI's property by ABS, using ABS' equipment, supplies, and employees, constitute "inhouse printing." If such activities constitute "inhouse printing," then the charges associated therewith are exempt from the sales tax imposed by Section 202 of the Tax Reform Code of 1971 (Code),[1] *as amended,* 72 P.S. § 7202, and SEI is entitled to a refund. After review, we affirm.

The parties' stipulation of facts[2] indicates that SEI provides outsourcing business solutions, such as investment processing, securities trading, mutual fund processing and asset management, to financial institutions, investment advisors and institutional investors.[3] As part of its business activities, SEI publishes and distributes reports, manuals, surveys and proposals, including SEC filings, sales presentation publications, performance reports, and training manuals and SEC study guides. In February 1999, SEI entered into a "Facilities Management Agreement" with ABS, wherein ABS agreed to provide printing services to SEI. Pursuant to the agreement, ABS performed printing services at SEI's facilities using ABS personnel following general instructions from SEI. The printing activities were performed at a separate and distinct location using machinery and supplies devoted predominately to printing activities.[4] The printing activities were of

1. Act of March 4, 1971, P.L. 6.

2. This court hears appeals from the Board de novo based upon either a record created before the court or stipulated facts. *See* Pa. R.A.P. No. 1571(h); *Plum Borough Sch. Dist. v. Commonwealth,* 860 A.2d 1155 (Pa.Cmwlth. 2004).

3. SEI is headquartered in Oaks, PA.

4. While not stipulated to, it is undisputed that the machinery and supplies used in the printing operations were provided by ABS. *See* Facilities Management Agreement, Ex. A to SEI's appellate brief.

a sufficient size, scope and character that they could be conducted separately as a commercially viable business.

While not the subject of any particular stipulation, the Facilities Management Agreement, made a part of the record, provides that in exchange for payment of a "base charge" of approximately $66,000 per month, ABS would provide, *inter alia,* various copying equipment,[5] initial training in the use of the equipment to key SEI personnel, various consumables,[6] replacement parts and service labor to keep the equipment functionally operable, 10 fully-trained personnel to work at SEI's premises during specified hours,[7] and a specific number of copies per month.[8] *See* Exhibit A to SEI's appellate brief. Pursuant to the agreement, all ABS personnel were covered by ABS' workers' compensation and liability policies of insurance. Further, the agreement provided, "ABS Personnel performing the [printing services] shall not be deemed to be employees of [SEI] for any purpose. [SEI] agrees to refrain from offering any of such individuals employment during the [term of the agreement] without ABS' prior written consent." *Id.* In addition to payment of the fee, SEI agreed to provide ABS with, inter alia, appropriate workspace, basic utilities and custodial service to ensure a clean work environment and a point-of-contact for daily operational issues. *Id.*

SEI paid approximately $125,000.00 in sales tax on its 1999 agreement with ABS. Thereafter, in August 2002, SEI sought a refund of the sales tax paid on the grounds that the printing operation constituted "in-house printing," which is exempt from tax pursuant to the Department of Revenue's regulations. The Board of Appeals concluded that SEI did not qualify for the inhouse printing exemption because it had out-sourced its printing requirements to a third party provider. Accordingly, the Board denied SEI's petition.[9] The Board of Finance and Revenue (Board) affirmed and the present appeal followed.

 Before reviewing the appellate arguments, the following statutory and regulatory provisions should be noted.[10] First, pursuant to Section 202(a) of the Code, a tax of six percent is imposed on "each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth...." 72 P.S. § 7202(a). A "sale at retail" is defined to include, "[t]he rendition of the service of printing or imprinting of tangible personal property for a consideration for persons who furnish, either directly or indirectly, the materials used in the printing or imprinting." Section 201(k)(2) of the Code, 72 P.S. § 7201(k)(2). However,

---

5. The equipment list is very detailed, specifying the model number of each piece of equipment. For instance, ABS was required to provide 27 Canon NP 6551 copiers with stapler/sorters.

6. The consumables include such items as toner, developer, paper, etc.

7. ABS also agreed to provide substitute personnel in the event someone was not available.

8. Copies in excess of that specified would be separately charged. ABS personnel provided other services, including mail services.

9. The Board did conclude, however, that SEI was entitled to a refund of sales tax paid on printing charges for printing operations occurring outside of the Commonwealth.

10. In general, tax statutes are strictly construed against the Commonwealth and any reasonable doubts as to a provision's application to a particular case are resolved in favor of the taxpayer. *Plum Borough Sch. Dist.,* 860 A.2d at 1157 n. 3.

printing, when engaged in as a business, is considered to be manufacturing,[11] such that the rendition of services or the transfer of tangible personal property, such as machinery, equipment and supplies used by the purchaser directly in the printing operation, are exempt from tax. *See* Section 201(k) of the Code; 61 Pa.Code § 32.36(a).[12] The Department's regulations provide further guidance on the exemption available for printing and related businesses.[13] Section 32.36 provides, in pertinent part:

(a) *The printing exemption.* Printing [14] and related businesses are exempt from sales and use taxes in accordance with the following:

(1) *Machinery, equipment, parts and supplies used directly in printing.* Printing, when engaged in as a business, is included in manufacturing under the [Code] and regulations applicable to manufacturers are also applicable to printers. Equipment, machinery—including components of a computer system ... which are used predominately and directly in the business of printing ... is exempt from tax.... With the exception of purchases involving improvements to real estate, directly used property may be purchased free of tax upon the presentation to a vendor of a properly executed exemption certificate certifying that the purchase will be directly used in printing—manufacturing....

. . . .

(4) *Inhouse printing.* Where the normal business of an entity is other than the business of printing, but the entity also *provides* its own full service printing requirements, an inhouse printing operation will qualify for the manufacturing exemption if the following apply:

(i) Inhouse printing is to be conducted in a separate and distinct location, utilizing separate and distinct machinery and supplies, devoted predominately to printing activities.

(ii) Inhouse printing is the responsibility of *employes* assigned to the job

---

**11.** Section 201(c)(2) of the Code, *as amended,* 72 P.S. § 7201(c)(2).

**12.** Similarly, the term "use" for purposes of the six percent use tax imposed on the use in the Commonwealth of tangible personal property and services purchased at retail, does not include:

the use or consumption of tangible personal property, including but not limited to machinery and equipment ... and supplies or the obtaining of services, [including the service of printing/imprinting of tangible personal property when such purchaser furnishes the articles used in the printing/imprinting], directly in the operations of ... [t]he manufacture of tangible personal property.

Section 201(*o*)(4)(B), 72 P.S. § 7201(*o*)(4)(B).

**13.** Generally, a regulation has the same legal force as a statute. *Commonwealth v. A.J.*

*Wood Research Co. of Pa.,* 60 Pa.Cmwlth. 225, 431 A.2d 367 (1981).

**14.** "Printing" is defined to include the following:

(i) The performance of an integrated series of operations engaged in as a business which is predominantly and directly related to the production of multiple copies of substantial similar printed matter upon which a sales or use tax is due or for which an exemption exists....

(ii) When part of an integrated series of operations, the process of organization and arrangement of graphic material into page or other final format, whether by manual operation, computer operation or otherwise. It does not include data processing, word processing, photocopying or automatic typewriters, except where the activities are part of the integrated series of operations....

61 Pa.Code § 32.1.

of inhouse printing and whose duties are predominately related to printing activities.

(iii) Separate accounting or interdepartmental billing is provided to reflect the cost of operating inhouse printing activities and to charge these costs against other business activities conducted by the taxpayer.

(iv) Inhouse printing activities are separate and distinct from other business activities and are not an integrated part of general data processing, word processing, copying or other business activity of the taxpayer.

(v) Inhouse printing activities are of sufficient size, scope and character that they could be conducted on a commercially viable basis separate and distinct from other business activities of the taxpayer.

(b) *Sales by printer.* Sales by printers shall conform with the following:

(1) *Generally.* Tax shall be collected by a printer upon the sale at retail of taxable printed matter. See § 31.29 (relating to books, printed matter and advertising materials). The tax applies to the charge for printing services.

(2) *Printed matter not qualifying as direct mail advertising literature or materials or mail order catalogs.* Generally, printers include as an element of the purchase price to customers' charges for service or labor pertaining to the printing or preparing of the printed matter. Charges for printing, imprinting, engraving, mimeographing, multigraphing, typesetting ... packaging and selling are included in the purchase price, and tax shall be collected with respect to charges....

61 Pa.Code. § 32.36(a)(4) (emphasis added). Finally, Section 31.29, referenced above, provides, in pertinent part, that "the sale at retail or use of publications,[15] advertising inserts, ... and advertising literature or materials[16] is subject to tax when delivered to a location within this Commonwealth." 61 Pa.Code § 31.29(b)(1) (footnotes added).

Against the above statutory and regulatory backdrop, we turn to the arguments raised on appeal. The Commonwealth concedes that SEI meets all of the requirements of 61 Pa.Code § 32.36(a)(4) except subsections (i) and (ii) (requiring, respectively, that separate and distinct machinery and supplies be used for inhouse printing and that the inhouse printing operations be performed by employees assigned to the job of inhouse printing). The Commonwealth maintains that SEI fails to satisfy subsection (i) because the printing is performed using ABS' equipment rather than SEI's. The Commonwealth further contends that SEI fails to satisfy subsection (ii) because that section requires the taxpayer's employees to be assigned to the job of inhouse printing and, here, ABS' employees, not SEI's, are performing the printing service.

On the other hand, SEI takes the position that the Department's regulation does not require it to *perform* its own printing services in order to qualify for the exemption; rather, SEI maintains that it is only required to *provide* the services. SEI seems to imply that since the agreement

---

**15.** A "publication" is defined as "[i]nformation transferred by means of tangible media" and includes such items as annual reports, investment prospectuses and proxy materials. 61 Pa.Code § 31.29(a).

**16.** "Advertising literature or materials" are defined as "[t]angible personal property that is intended to promote business interest, create goodwill or engage the attention or interest of a recipient" and includes printed matter, investment prospectuses, and financial and corporate annual reports. *Id.*

with ABS authorizes it to direct the work of ABS, requires ABS personnel to demonstrate a good work ethic and meet SEI's dress code, and provides that a full-time SEI employee remain on-site at the printing operations, it meets subsection (ii). According to SEI, the nature of the operation is controlling, not the identity of the operator.[17] Therefore, SEI contends, since the printing operations conducted on its premises would be exempt if its own employees performed them rather than ABS', it should qualify for the exemption. Finally, SEI asserts that since it uses the materials prepared by ABS in its printing operations, the items are excluded from tax pursuant to Section 201(o)(4)(B)(i) of the Code, which excludes from the term "use" for purposes of the imposition of the use tax, the "use or consumption of tangible personal property ... and services [such as obtaining the service of printing tangible personal property when the purchaser furnishes directly or indirectly the articles used in the printing] directly in the operations" of the manufacture of personal property. 72 P.S. § 7201(o)(4)(B)(i).

■ We begin by noting the well-established principle that when interpreting regulations promulgated by an agency, this court affords substantial deference to the interpretation rendered by the administrative agency. *Davis v. Dep't of Welfare,* 776 A.2d 1026 (Pa.Cmwlth.2001). However, such deference is not afforded the agency's interpretation when the agency's construction of the regulation is contrary to its plain meaning or frustrates legislative intent. *Id.* After a review of the regulatory scheme, we conclude that the Commonwealth's and Board's construction of the inhouse printing exemption is consistent with the plain language of the regulation and the entire regulatory scheme.

■ The tax treatment of printing services under the Code depends upon whether the taxpayer is purchasing the printing service, engaged in printing as a business operation, or supplying its own printing needs on a scale that such printing activities could constitute a commercially viable business. In general, a taxpayer's purchase of printed matter, including publications and advertising materials, or printing services is subject to sales tax. *See* Section 201(k)(2) of the Code; 61 Pa.Code § 32.36(b). However, if a taxpayer is engaged in printing as a business, then the purchase of tangible personal property and certain services used directly in the printing operation are exempt from tax. *See* Section 201(k); 61 Pa.Code § 32.36(a). Where a taxpayer engaged in a business other than printing provides its own inhouse printing operation, purchases of tangible personal property and certain ser-

---

17. In making this argument, SEI relies on *R.G. Johnson Co. v. Commonwealth,* 50 Pa. Cmwlth. 111, 411 A.2d 1315 (1980), *aff'd,* 495 Pa. 256, 433 A.2d 465 (1981). After a review thereof, we conclude that *R.G. Johnson* is distinguishable and not dispositive of the issue raised on appeal. There, the issue was whether the taxpayer, a company that sunk mine shafts and drove slopes for soft coal extractors lacking men and equipment to perform such operations, was engaged in manufacturing, thereby entitling it to an exemption from sales and use tax on equipment used in its operations. The parties had stipulated that if the soft coal extractor had performed such operations itself, its purchases would not be subject to tax. In that context this court stated:

> [T]he only distinguishing factor here is that the [mine operator] has contracted [taxpayer] to perform a task which would otherwise need to be performed by him as an essential step in his operation of finally extracting coal from a mine. That factor is not sufficient to convert [taxpayer's] business activities from mining to another, nonexcluded form of activity. It is the nature of the operation and not the identity of the operator that is controlling.

*Id.* at 1316.

vices used directly in the printing operation will receive the same tax exemption available to manufacturing operations as long as the printing operation meets the requirements of Section 32.36(a)(4).

These distinctions in tax treatment are illustrated by *Westinghouse Electric Corp. v. Board of Finance and Revenue*, 53 Pa. Cmwlth. 116, 417 A.2d 800 (1980), a case cited by both parties.[18] There, the taxpayer, Westinghouse, a large manufacturer of electrical products, sought a refund for use taxes paid on the purchase and use of art work, source materials and photography equipment. In addition to its manufacturing operation, Westinghouse operated a photo-center and printing facility. The printing center printed various items, including sales brochures, product advertising, pricing information, business forms and stationery. Three hundred employees worked in the printing division. Westinghouse sought a refund for art work and resource materials prepared by independent art studios, which its printing division then used for reproduction in sales manuals and reports. Westinghouse also sought a refund for similar art items, which it sent to an outside independent printer to be reproduced. This court held that the Board erred in denying Westinghouse a refund on taxes paid for the art work and source materials used solely and directly in its printing operation. In doing so, we concluded that such items were exempt from tax despite that Westinghouse was not engaged in printing as a business. However, as to the use of art work and source materials purchased from independent art studios and transferred to an outside company for printing, this court affirmed the Board's denial of a refund. In doing so, we rejected Westinghouse's contention that the "ultimate use of the items and not the identity of the printer dictates the availability of the manufacturing/printing exclusion under ... Section 201(*o*)(4)(B)(i) of the Code as pertained to the inhouse printing." 417 A.2d at 804. Rather, we concluded that:

> The only event which is excluded by the statute's manufacturing exclusion is the "use or consumption" in manufacturing, i.e., printing, and, *as to the outside work, that excluded event inures to the benefit of the outside printer,* not to taxpayer....
>
> ....
>
> Because the taxpayer, as to the outside printing, did not purchase the art work and source materials for use in its own printing operation, the excluded use was never attributable to this taxpayer.

*Id.* (Footnote omitted and emphasis added). The Department's subsequently promulgated regulation governing the exemption for inhouse printing does not alter this analysis.

Here, SEI's contention that the nature of the operation is the controlling factor, not the identity of the operator, is not supported by the plain language of Section 32.36(a)(4). The regulation requires that the inhouse printing be performed by "employees." The only logical construction of this requirement is that taxpayer's employees must perform the printing services.[19] This construction is supported by

---

18. The Commonwealth contends that the inhouse printing exemption appearing at 61 Pa. Code § 32.36(a)(4) is "derived" from *Westinghouse.*

19. In its reply brief, SEI contends that the term "employee" should be construed as defined in the Department's Statement of Policy appearing at 61 Pa.Code § 60.4. There, in connection with addressing the taxability of the sale at retail or use of "help supply services," an "employe" is defined as, "[a] person who is paid for his work or services by a vendor, including persons on the payroll or

the remainder of subsection (4). As written, the regulation clearly contemplates that the taxpayer is performing the printing services and not an outside contractor. Otherwise, it would not be necessary to specify that the printing activities cannot be an integrated part of the taxpayer's other business activities [*see* subsection (4)(iv)] or that such activities are of a sufficient scope that they could be conducted on a separate commercially viable basis [*see* subsection (4)(v)]. Obviously, here, the printing activities are of a sufficient scope that they can be conducted on a separate, commercially viable basis because ABS is performing them on that very basis for a fee. If ABS performed these services for SEI at its own facilities, there is no doubt such services would be taxable. The fact that ABS has agreed to provide the same services at SEI's premises using ABS's own equipment and personnel does not change the taxability of the service. Whether the printing services are performed at SEI's premises or ABS's, SEI has contracted with a separate entity, which uses its own personnel and equipment to meet SEI's printing requirements.

Accordingly, we conclude that the Commonwealth's and Board's construction gives logical effect to the plain language of the regulation and is consistent with the statutory scheme. The Code provides an exemption from sales and use taxes for

purchases of tangible personal property and services used directly in manufacturing operations, including printing. The inhouse printing exemption extends this exemption to taxpayers who perform a significant amount of inhouse printing. Here, the exemption sought by SEI, properly "inures to the benefit of the outside printer," ABS.

### *ORDER*

AND NOW, this 17th day of January, 2006, the order of the Board of Finance and Revenue in the above captioned matter is hereby AFFIRMED. Judgment shall become final unless exceptions are filed within 30 days of this order pursuant to Pa. R.A.P. 1571(i).

---

independent contractors." "Help supply services" are defined, in turn, as:

> The providing of an individual by a vendor to a purchaser whereby the individual is an employe of the vendor and the work performed by the individual is under the supervision of the purchaser.
> (i) The term includes the type of service provided by labor and manpower pools, employe leasing services, office help supply services, temporary help services, usher services, modeling services or fashion show model supply services.

> (ii) The term does not include farm labor, home health care, human health-related services, including nursing and personal care....

Clearly, "help supply services" are not at issue in this case. The definitions set forth in 61 Pa.Code § 60.4 are limited to that section and there is no indication that they should be used in construing other sections of the Code and regulations. For the reasons that follow, we conclude that the Commonwealth and Board's construction of the term "employee" as it is used in the inhouse printing exemption should be given effect.