**EUR SYSTEMS, INC., Petitioner**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2008.

Decided Jan. 9, 2009.

William C. Felker, Camp Hill, for petitioner.

Bart J. DeLuca, Jr., Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge,* and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge FRIEDMAN.

EUR Systems, Inc. (EUR) petitions for review of the October 20, 2006, order of the Board of Finance and Revenue (Board) denying EUR's petition for the refund of $107,910.39 in sales and use tax paid during the period from November 23, 2002, through December 10, 2005.[1] We affirm.

At all relevant times, EUR was engaged as a data processing facility headquartered in Mechanicsburg, Pennsylvania.[2] EUR contracts with clients, such as AT & T and Working Assets, for what is termed "fulfillment services," which consist of creating and mailing customer telephone bills for EUR's clients. EUR acquires raw data from its clients in electronic or compact disc form. EUR then processes the raw data, prepares it in a particular format according to a client's specifications and uses machinery to create paper telephone bills for its clients' individual customers. The individual bills include the customer's name, address, account number, a listing of telephone calls made, the charge for each call and the amount due for that month's activity.[3] After creating the paper telephone bills, EUR folds, inserts, sorts, and prepares the bills for mailing. EUR then sends the bills to a mailing facility. During the period at issue, EUR would output approximately five million individual bills a month.

On January 23, 2006, EUR filed a petition with the Pennsylvania Department of Revenue's Board of Appeals (BOA), seeking a refund of sales and use taxes paid by EUR on services to printing equipment and meter reading charges. Pursuant to section 201(c)(2) of the Tax Reform Code of 1971 (Tax Code),[4] an entity is entitled to a tax exemption related to printing activities if it engages in printing as a business. *See also* 61 Pa.Code § 32.36(a)(1).[5] The

---

* The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

1. Because no record is certified to this court by the Board, we rely on the parties' Stipulation of Facts to summarize the facts and procedural history. Pa. R.A.P. 1571(f).

2. The company's assets were sold on September 1, 2006. EUR moved its business out of state and is no longer active in Pennsylvania.

3. Representative samples of the bills are attached to the parties' Stipulation of Facts as Exhibits B and C.

4. Act of March 4, 1971, P.L. 16, *as amended*, 72 P.S. § 7201(c)(2). In relevant part, section 201(c)(2) of the Tax Code provides as follows:

 (c) "MANUFACTURE." The performance of manufacturing, fabricating, compounding, processing or other operations, *engaged in as a business*, which place any tangible personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not be limited to—
 (2) The publishing of books, newspapers, magazines and other periodicals and *printing.*
 72 P.S. § 7201(c)(2) (emphasis added).

5. In relevant part, 61 Pa.Code § 32.36(a)(1) provides as follows:

 (a) *The printing exemption.* Printing and related businesses are exempt from sales and use taxes in accordance with the following:
 (1) *Machinery, equipment, parts and supplies used directly in printing.* Printing, when engaged in as a business, is included in manufacturing under the [Tax Code] and regulations applicable to manufacturers are also applicable to printers. Equipment, machinery—including components of a computer system, accessories, parts and supplies therefor which are used predominantly and directly in the business of print-

statute does not define the term "printing," but the Department's regulations state that printing means the production of multiple copies of "substantial[ly] similar printed matter." 61 Pa.Code § 32.1.[6] If an entity's normal business is other than printing, the entity still may qualify for a tax exemption if is satisfies the criteria for inhouse printing set forth at 61 Pa.Code § 32.36(a)(4).[7] In relevant part, this regulation states that the entity's printing operations must be separate and distinct from the entity's other business activities.

At an administrative hearing before the BOA, EUR submitted copies of invoices and photographs of its equipment. In addition, EUR offered into evidence a signed statement by its director of operations, (BOA's Decision and Order, at 2), which essentially averred that EUR's operations satisfied the five criteria for inhouse printing set forth in 61 Pa.Code 32.36(a)(4).

The BOA denied EUR's refund request, concluding that the printing of telephone bills does not fall within the definition of "printing" because every telephone bill is unique, and, therefore, EUR cannot meet the requirement of 61 Pa.Code § 32.1 that it produce multiple copies of substantially similar printed matter.

EUR filed a timely appeal with the Board, which sustained the BOA's decision. The Board agreed with the BOA's determination that EUR did not satisfy the "substantially similar" requirement of 61 Pa.Code § 32.1 because, although there are similarities in the layout of customers' invoices, the information on every invoice is different and unique. The Board also concluded that EUR did not satisfy the requirement of 61 Pa.Code § 32.36(a)(4)(iv) because EUR's printing operation is an integral part of its business of generating invoices for its clients. EUR now petitions this court for review of the Board's decision.[8]

 EUR first argues that the imposition of tax on printing that does not meet the "substantially similar" requirement of 61 Pa.Code § 32.1 violates the uniformity

ing, regardless of the technology involved, is exempt from tax.

6. 61 Pa.Code § 32.1 defines printing as including:

The performance of an integrated series of operations engaged in as a business which is predominantly and directly related to *the production of multiple copies of substantial similar printed matter* upon which a sales or use tax is due or for which an exemption exists. Based upon a 12–month period, property is predominantly used in printing when multiple copies are produced for 50% or more of the time or the total copies of printed matter, divided by the number of orders for *substantially similar* items, exceeds 50 or more copies.

61 Pa.Code § 32.1 (emphasis added). We observe that the regulation first refers to *"substantial* similar printed matter" and later to *"substantially* similar items."* Consistent with the language of the regulation's amendment set forth at 15 Pa. B. 1438 (April 20, 1985) as well as with the parties' use of the phrase, we recognize the term "substantially

similar" to be a term of art and construe it in that context.

7. The regulation sets forth five criteria. At issue here is the following:

(4) *Inhouse printing.* Where the normal business of an entity is other than the business of printing, but the entity also provides its own full service printing requirements, an inhouse printing operation will qualify for the manufacturing exemption if the following apply:

\* \* \*

(iv) Inhouse printing activities are separate and distinct from other business activities and are not an integrated part of general data processing, word processing, copying or other business activity of the taxpayer.

61 Pa.Code § 32.36(a)(4)(iv).

8. Although the matter is brought within our appellate jurisdiction, when reviewing a decision of the Board, our scope of review is *de novo. Canteen Corporation v. Commonwealth,* 818 A.2d 594 (Pa.Cmwlth.2003), *aff'd,* 578 Pa. 504, 854 A.2d 440 (2004).

clause of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. However, although EUR raises the constitutional issue in its petition for review, there is no indication that EUR has preserved this issue by raising it below. (*See* Board's op. at 1.) Pa. R.A.P. 1571(h) governs our scope of review and provides that a question will be considered on appeal "if it was raised at any stage of the proceedings below and thereafter preserved." It is true that a facial challenge to the constitutionality of an administrative agency's statute may not be addressed by the agency, and, therefore, may be raised for the first time on appeal. *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265 (2003). However, agencies have authority to consider the validity of their regulations, *id.*; *Tancredi v. State Board of Pharmacy*, 54 Pa.Cmwlth. 394, 421 A.2d 507 (1980), and, therefore, we conclude that EUR has waived this issue on appeal.

█ Alternatively, EUR argues that the "substantially similar" requirement set forth in 61 Pa.Code § 32.1 is met where its equipment is predominantly used in the printing of individual telephone bills. Thus, we must determine whether the telephone bills, taken as a whole, are "substantially similar printed matter," or whether the inclusion of different material, such as itemized calls, in the body of each invoice precludes such a finding.

The statutory provisions related to the manufacturing exemption offer guidance on this question. The statute refers to the "publishing of books, newspapers and magazines and other periodicals and printing," 72 P.S. § 7201(c)(2), and the examples given relate to multiple copies of identical items. Although some of these items can be personalized, such as by the insertion of a child's name within a book, *see Commonwealth v. A.J. Wood Research Company of*

*Pennsylvania*, 60 Pa.Cmwlth. 225, 431 A.2d 367 (1981), the remainder of the material is identical in all copies. In addition, the regulation defines the term "printed matter" as including, "but is not limited to books, booklets, letterheads, billheads, printed envelopes, folders, printed packages and packaging materials, advertising circulars, programs, newspapers, magazines, periodicals *and similar items.*" 61 Pa.Code § 32.1 (emphasis added). Like the statutory provision, the regulation also sets forth examples of items *having identical, or very ,nearly identical matter in every copy.*

Our court addressed this issue, albeit briefly, in *A.J. Wood.* When that case was decided, 61 Pa.Code § 32.1 defined printing to mean the mechanical reproduction of printed matter. The issue before the court was whether the use of computerized word processing equipment to produce a large quantity of materials for direct mail advertising fell within the printing exclusion of the Tax Code. After concluding that it did, the court also determined that the "partial individualization" of the direct mail advertising letters—by the insertion of individual names and addresses into otherwise identical correspondence—did not change the fact that the printed materials were substantially similar.

We agree with the Commonwealth that the facts of this case are the reverse of those presented in *A.J. Wood.* Whereas the variation of the documents in *A.J. Wood* was minimal and the body of the form letters did not vary for each recipient, the documents here consist, in significant part, of individual telephone calls, dates, times, numbers and charges, *which are different on every bill.* Because every individual telephone bill is unique, EUR has not established that it is entitled to an

exemption for "printing" under section 201(c)(2) of the Tax Code.[9]

Accordingly, we affirm.

## ORDER

AND NOW, this 9th day of January, 2009, the order of the Board of Finance and Revenue, dated October 20, 2006, is hereby affirmed. This order shall become final unless exceptions are filed within thirty days pursuant to Pa. R.A.P. 1571(i).

9. Having so decided, we need not address whether EUR qualifies for the inhouse printing exemption under 61 Pa.Code § 32.26(a)(4).