James DAVIS, Petitioner,

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 7, 2000.

Decided May 8, 2001.

Preston T. Younkins, Kittanning, for petitioner.

Diana C. Clark, Harrisburg, for respondent.

Before DOYLE, President Judge, FRIEDMAN, Judge, and MIRARCHI, Senior Judge.

DOYLE, President Judge.

James Davis, through his wife Betty M. Davis, petitions this Court for review of the June 25, 1999 administrative order of the Pennsylvania Department of Public Welfare (Department), Bureau of Hearings

and Appeals (BHA), denying the appeal in part, and sustaining it in part.

A hearing officer denied Mrs. Davis' request to revise her proposed $118.81 monthly allowance because she failed to demonstrate the requisite "exceptional circumstances causing significant financial duress," although he did approve her request to increase her monthly maintenance needs allowance by $25.04.[1] We vacate and remand.

The essential facts are undisputed. Mr. Davis was born in 1911 and is currently a resident of the Sugar Creek Rest Home, Armstrong County, Pennsylvania. He was a public school employee and receives a retirement pension, Social Security, and medical assistance for his care. Mrs. Davis was also a public school employee and receives a pension, Social Security and interest income from an investment. In early 1999, Mrs. Davis, who has power of attorney for Mr. Davis, was notified that the Department proposed to increase Mr. Davis' monthly contribution toward his cost of nursing home care, and to decrease Mrs. Davis' community spousal monthly maintenance needs allowance[2] to $93.77. The primary basis for the alteration was an increase in the pensions that both Mr. and Mrs. Davis receive. However, in addition to those increases in their income, the Davises also experienced an increase in the cost of their health care coverage.

Mrs. Davis appealed these proposed changes requesting a revision in the proposed monthly maintenance needs allowance to restore the pre–1999 allowance of $226.29. The Department conducted a hearing on April 25, 1999. Testifying for the Department were an income maintenance caseworker and an income maintenance caseworker supervisor. Mrs. Davis testified to medical expenses she had in 1998 that were unreimbursed and totaled approximately $5,000. She also produced a copy of her federal income tax return for 1998 showing medical and dental expenses of $28,581.[3] The parties agreed that Mr. Davis' monthly gross income for 1999 was $2,710.52[4] and that Mrs. Davis' monthly gross income for 1999 was $1,444.75.[5]

■ BHA denied Mrs. Davis' appeal in part and sustained it in part by increasing

1. This slight adjustment appears to have resulted from the assessment of a special condominium fee.

2. This income is known as the minimum monthly maintenance needs allowance (MMMNA), or colloquially as spousal maintenance, and is the amount of income an institutionalized spouse is allowed to give to the community spouse each month from his own income in order to bring her up to the spousal maintenance minimum permitted by law. This figure is based upon a formula that is calculated as at least one and one-half times the official poverty line income level for two people, as determined annually by the Office of Management and Budget; plus an excess shelter allowance (the amount by which the total of the community spouse's expenses for rent or mortgage, insurance, etc. and the standard utility allowance exceeds 30% of the 150% of the official poverty income level for two people); less any income the community spouse is receiving from external sources. 42 U.S.C. § 1396r–5(d)(3)(A) and § 1396r–5(d)(3)(B)(iii); 55 Pa.Code § 181.452(d)(2)(i). Essentially, this allowance is the amount Mr. Davis is allowed to provide his wife from his monthly income. Adjudication, Finding of Fact No. 8.

3. This total reflected Mrs. Davis' $5,000 in unreimbursed expenses and over $23,000 to the nursing home for Mr. Davis' care.

4. This was primarily comprised of monthly pension benefits of $1,652.44, Social Security of $1000.50, and a cost of living increase of $55.00 per month.

5. This amount was comprised of monthly pension benefits of $972.42, Social Security of $399.50, and $72.83 in estimated monthly income from an investment account maintained at Merrill–Lynch.

her monthly spousal allowance by $25.04 to $118.81, resulting in a revised gross monthly income for Mrs. Davis of $1,563.56. Mrs. Davis then appealed to this Court for review.[6] She argues, on appeal, that she has demonstrated exceptional circumstances in her significant medical expenses and that the hearing officer utilized the higher "clear and convincing" standard rather than the "preponderance of the evidence" standard in ascertaining whether Mrs. Davis is subjected to financial duress.[7]

Prior to 1988, Medicare eligibility rules in this country frequently pauperized married couples by requiring them to virtually deplete their joint assets to allow one to qualify for coverage while the other remained in the "community." *Bird.* To prevent community spousal impoverishment, while ensuring that no one avoided contributing their fair share toward medical care, Congress amended the Social Security Act by enacting the Medicare Catastrophic Coverage Act of 1988, 42 U.S.C. § 1396r-5, *as amended* (MCCA), allowing income for the community spouse above the poverty level.[8] Under the MCCA, the community spouse receives, in addition to an allotted share of the couple's resources

(the "protected share"), a minimum monthly maintenance needs allowance, or MMMNA, without rendering the institutionalized spouse ineligible for Medicare assistance. *See* 42 U.S.C. § 1396r-5(d); 55 Pa.Code § 181.452(d)(2).

When the community spouse feels that the amount is inadequate, or encounters exceptional circumstances, the community spouse may request a hearing to seek revision of that allowance. 42 U.S.C. § 1396r-5(e)(2)(A), 1396r-5(e)(2)(B); 55 Pa.Code § 181.452(d)(2)(ix). Specifically, 55 Pa. Code § 181.452(d)(2)(ix) provides for revision of the spousal allowance as follows:

The community spouse maintenance need allowance may exceed the amount determined in subparagraph (ii) [standard monthly allowance] and the amount specified in subparagraph (iv) [statutory maximum] if a greater amount is determined as a result of a Departmental hearing decision in which either spouse establishes **that the community spouse needs income above the standard due to exceptional circumstances resulting in significant financial duress.** The CAO shall review the increased income need established by the Departmental hearing decision at each applica-

---

6. This Court's standard of review of the Bureau's adjudication is limited to a determination of whether the adjudication is in accordance with the law, does not violate constitutional rights, and is supported by substantial evidence in the record. *Bird v. Department of Pub. Welfare,* 731 A.2d 660 (Pa.Cmwlth.1999).

7. Because of our decision today, we need not address Mrs. Davis' allegation that the hearing officer utilized a "clear and convincing" standard. However, the Department's decisions must be based on substantial evidence whether a clear and convincing standard or a preponderance of the evidence is utilized.

8. The MCCA modified the original Medicaid program to deal with situations in which non-institutionalized spouses of institutionalized

persons needed to be impoverished before the institutionalized spouse could receive benefits. Under the MCCA, a Community Spouse Resource Allowance (CSRA) and a Minimum Monthly Maintenance Needs Allowance (MMMNA) were established to provide the community spouse with "sufficient, but not excessive" resources and income to provide for his or her support. H.R. Report No. 100–105(II), 100th Cong.2d Sess. 69–71 (1988). *See also Bird.* The MCCA also was designed to eliminate loopholes in Medicaid law that permitted couples with substantial resources to qualify for Medicaid welfare assistance by sheltering resources in the community spouse's name. *See Thomas v. Commissioner of the Div. of Med. Assistance,* 425 Mass. 738, 682 N.E.2d 874, 876 (1997).

tion/reapplication or whenever a change in the circumstances that warranted the increase no longer exist.

55 Pa.Code § 181.452(d)(2)(ix) (emphasis added). This is what Mrs. Davis sought to accomplish, and because the parties do not dispute the calculations, we are called upon to interpret the meaning of "exceptional circumstances resulting in significant financial duress" in the regulations.

■ We believe this to be an issue of first impression for this Court, and neither party cites to us any authority interpreting this segment of the regulations. The core issue, then, is whether the Department and the hearing officer properly applied the "exceptional circumstances" standard in refusing to increase Mrs. Davis' MMMNA. The hearing officer indicated that "considerable expenses are not necessarily the equivalent of exceptional circumstances." (Adjudication, p. 6.) The hearing officer went on to explain that:

> The Legislature and Department, in allowing a spouse in the community to set aside assets so he or she would not become destitute, considered the usual expenses of the spouse in the community. And they made allowance for these expenses. An exceptional circumstance would necessarily be something the Legislature and Department would not consider usual for a spouse residing in the community.

*Id.* Based on the foregoing, it is apparent that the hearing officer improperly interpreted the relevant provision of the regulation at issue. The hearing officer has mistakenly understood his task to be determining whether *an expense* was "exceptional" or "ordinary;" that is, he required that the nature of the expense itself be exceptional, rather than determining whether or not the expense involved pre-

sented exceptional demands on the resources of this particular community spouse. We think this is contrary to the letter and spirit of the statute.

■ In Pennsylvania, Section 403(b) of the Public Welfare Code[9] states that: "The department shall establish rules, regulations and standards, consistent with the law, as to eligibility for assistance and as to its nature and extent." 62 P.S. § 403(b). It is well settled that the courts of this Commonwealth, faced with interpreting regulations promulgated under an agency's legislative rulemaking power, afford substantial deference to the interpretation rendered by the administrative agency. *Pennsylvania Human Relations Comm'n v. Uniontown Area Sch. Dist.,* 455 Pa. 52, 313 A.2d 156 (1973). However, this Court has held that we need not give deference to an agency where its construction of a regulation is contrary to its plain meaning or frustrates legislative intent. *Scanlon v. Department of Pub. Welfare, Dep't of Aging,* 739 A.2d 635 (Pa.Cmwlth. 1999). Therefore, although courts ordinarily defer to an agency's interpretation of regulatory text, where, as in this case, the meaning of a regulation is essentially a question of law for the court, and when convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted. *Uniontown.*

The hearing officer parsed the regulatory standard into two segmental requirements and concluded that, in order for an expense to be due to "exceptional circumstances resulting in significant financial duress," the expense must be an exceptional, extraordinary or unexpected circumstance and the expense itself must create significant financial duress on the community spouse. On the basis of this interpretation, the hearing officer concluded that

**9.** Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 403(b).

the legislature had included in the MMMNA expenses that were to be expected and those incurred in the normal course of everyday living. In denying Mrs. Davis relief, the hearing officer stated:

It is regrettable that as we age our need for medical care increases. However, that is a simple fact of life that the Legislature and Department would have considered in making allowance for a spouse in the community. Spouse has not shown anything exceptional in the **nature** of these medical expenses. Therefore, this is a basis for denying her appeal.

(Adjudication, p. 7.) (Emphasis added.)

The language of 55 Pa.Code § 181.452(d)(2)(ix) entails a finding of core "exceptional circumstances" that may give rise to expenses causing "significant financial duress." This language does not require that the expenses themselves be exceptional, but rather that the circumstances and the necessity of the expenses be exceptional. Under the Hearing Officer's interpretation, there are few, if any, expenses which the legislature might not have considered in "making allowance for a spouse in the community," thereby rendering this provision surplusage. Because the intent of the statute is to prevent impoverishment of the community spouse, application of the "exceptional circumstances" standard individually is consistent with the goal of enabling the community spouse to continue to reside in the community. We contend that the opportunity to increase the MMMNA here is not to "guarantee the amenities of any current lifestyle" but rather to prevent the impoverishment of a community spouse. *Bird.* Yet, recognizing the General Assembly's primary intent in this instance does not serve to nullify the "exceptional circumstances" language that our legislature itself inserted into its adoption of the MCCA. If Mrs. Davis can demonstrate the legitimacy of her unreimbursed medical expenses,[10] and thereby demonstrate that her MMMNA should be increased on the basis of "exceptional circumstances resulting in significant financial duress," such an increase would be in furtherance, and not in derogation, of our Pennsylvania statute and the MCCA. We note, again, that Mrs. Davis has a MMMNA of $1,563.56. From that amount, Mrs. Davis must pay shelter expenses, which were agreed upon as $613.56, Medicare payments of $45.50, medical insurance premiums of $231.13 and approximately $50 in federal withholding, leaving Mrs. Davis approximately $600 per month for food, clothing, transportation, necessaries, perhaps medication, **and** payment of the $5,000 in unreimbursed medical expenses. The record contains a vague reference that this amount is to be repaid in $400 per month installments, which represents 80% of Mrs. Davis' remaining disposable income. We think this is exactly the type of "exceptional circumstances creating financial duress" that Congress and our General Assembly had in mind when it created the MMMNA exception.

We conclude that the hearing officer improperly focused on the nature of the expense rather than on the exceptional circumstance of the community spouse. To fail to ease the financial burden of a community spouse, and to deny additional support in the face of exceptional circumstances, would be an affront to the conscience of the court, and would certainly very soon require that the community spouse herself become a public charge. Therefore, we vacate and remand for a determination of whether, in this case and

---

**10.** Unfortunately, the record is devoid of any reference to the specific medical services that resulted in these unreimbursed medical expenses.

in light of this opinion, Mrs. Davis' unreimbursed medical expenses constitute "exceptional circumstances resulting in significant financial duress."

### ORDER

**NOW,** May 8, 2001, the order of the Pennsylvania Department of Public Welfare in the above-captioned matter is hereby VACATED and this case is REMANDED for a determination of whether, consistent with the foregoing opinion, Mrs. Davis' unreimbursed medical expenses constitute "exceptional circumstances resulting in significant financial duress."

Jurisdiction relinquished.

FRIEDMAN, Judge, Concurring.

I concur in the result reached by the majority. However, I write separately because I believe that, once the majority concluded that the hearing officer committed an error of law by failing to focus on the "exceptional circumstances creating financial duress" for Mrs. Davis, I do not believe it was necessary for the majority to consider whether the error is "an affront to the conscience of the court." (Majority op. at 1030.)