Eileen REED, Plaintiff/Respondent,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, Defendant/Appellant.

No. ED 87348.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 20, 2006.

Elizabeth Laflamme, St. Louis, MO, for Appellant.

Vincent Gerard Rapp, St. Charles, MO, for Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Missouri Department of Social Services, Family Support Division (the Division) appeals from the judgment of the trial court reversing the decision of the Division that Eileen Reed (Reed) was ineligible for medical assistance vendor benefits for four months. The judgment is affirmed.

*Factual and Procedural Background*

On July 25, 2003, Reed entered the Blanchette Place Care Center (the Care Center). On September 30, 2003, Reed and her daughter, Sandra Teson (Teson), entered into a "Personal Care Contract" (the Contract) identifying Reed as the "Care Recipient" and Teson as the "Care Provider." The Contract set out duties of the Care Provider such as preparation of nutritious, appropriate meals, house cleaning and laundry; assistance with grooming, bathing, dressing, and personal shopping, including purchase of clothing, toiletries and other personal items; assistance with purchasing hobby, entertainment or other goods for Reed's use and enjoyment, taking into account Reed's ability to pay for such items; monitoring of Reed's physical and mental condition and nutritional needs in cooperation with health care providers; arranging for transportation to health care providers and to the physician of Reed's choice, as well as arranging for assessment, services and treatment by appropriate health care providers for Reed; assisting Reed in

carrying out the instructions and directives of Reed's health care providers; arranging for social services by social service personnel as needed; visiting at least weekly and encouraging social interaction; arranging for outings and walks, if reasonable and feasible for Reed; and interacting with and/or assisting any agent of Reed in interacting with health professionals, long-term care facility administrators, social service personnel, insurance companies, and government workers in order to safeguard Reed's rights, benefits, or other resources as needed.

On October 6, 2003, Teson, as Reed's Conservator, filed the Contract as well as a Petition for Expenses (Petition) with the probate court. That same day, the court approved the Petition, permitting a payment of $11,000.00 to be made to Teson as the Conservator under the Contract. On October 14, 2003, an $11,000.00 check was written to Teson. Two days later, the Division received Reed's Application for Medical Assistance Vendor Benefits (the Application). The Application was submitted with the Petition, the Contract and a copy of the $11,000.00 check.

On October 23, 2003, a request for interpretation of policy was submitted to the Income Maintenance Section, Program and Policy in Jefferson City. The Application and Contract were forwarded for evaluation as to whether or not the $11,000.00 was a transfer of property rendering Reed ineligible for medical assistance vendor coverage. On December 3, 2003, Reed was notified that her Medicaid application was rejected because the $11,000.00 given to Teson was determined to be a transfer of property disqualifying her for vendor coverage until February 2004.

Reed submitted an Application for State Hearing. At the hearing, the hearing officer considered evidence from the Division and Teson on Reed's behalf, and issued a decision affirming the Division's rejection of Reed's application for medical assistance vendor benefits. Reed appealed to the circuit court, which reversed the Division's decision and found in favor of Reed. The Division now appeals.

## Point on Appeal

Reed maintains that the Division erred in its decision that the $11,000.00 payment by Reed to Teson was made without consideration because the weight of the competent and substantial evidence established that in exchange for the payment Reed received a binding and enforceable personal care contract to receive personal services for the rest of her life, which is, as a matter of law, fair and valuable consideration.

## Standard of Review

When the circuit court reverses an administrative agency's ruling, the appellate court "reviews the agency's decision, not that of the circuit court." *Collins v. Department Of Social Services, Family Support Division*, 141 S.W.3d 501, 503 (Mo.App. S.D.2004). An agency's decision is presumed to be correct, however. *Id.* The reviewing court must examine the record in the light most favorable to the administrative decision and disregard evidence that might support findings different from those of the agency. *Id.* The typical scope of review is whether the agency's decision is supported by competent and substantial evidence on the record as a whole. *Id.* at 503–504. However, when the agency decision involves the interpretation of law and application of the law to undisputed facts, the court must form its own independent conclusions, and is not bound by the interpretation of the agency. *Id.* at 504. Some deference, however, is appropriate when the issue in-

volves an agency interpretation of its own regulation. *Id.*

### Discussion

The Division maintains that it correctly determined that the $11,000.00 payment through the Contract was a transfer of property because the Contract lacked fair and valuable consideration in that the services rendered by Teson were largely duplicative of the services provided by a licensed skilled nursing facility. In its decision, the Division concluded that:

> [T]he fact that the [circuit court] approved of this payment does not change the overwhelming appearance that this was a transfer without receiving fair and valuable consideration. Protection of non-exempt assets in this manner has not been allowed by that Agency in the past. Ms. Teson, acting as conservator simply took [Reed's] money for doing things that a reasonable person might have expected to do for no compensation. If she is unable or unwilling to do those things without consideration, perhaps she should relinquish the role as conservator to a public administrator.

We find this conclusion is against the weight of the competent and substantial evidence on the record as a whole for the following reasons. There were substantial services provided by Teson under the Contract that were not duplicative of the nursing home's services, and for which $11,000.00 was fair compensation over an eleven-year plus period.[1] Namely, the Contract provided that Teson would provide a communication link between Reed and her doctors and nurses regarding the status of her health, as well as interact with facility personnel to safeguard Reed's rights and benefits. Reed, as a result of her medical problems which include a stroke, has difficulty with verbal communication and is withdrawn and avoids communication with staff. Teson testified that "My mom doesn't speak well, and she doesn't communicate with a lot of different people, outside of me."

Reed has trouble eating because of her stroke and Parkinson's disease. Specifically, she has trouble bringing utensils to her mouth. The staff is not able to spend lengthy amounts of time with Reed, helping her learn to hold a spoon and feed herself. Teson, on the other hand, does. She devotes time on a constant basis helping Reed to feed herself. Teson asked a nurse what happens when she is not there to help Reed feed herself, and the nurse replied that they give Reed a nutrition shake. The staff states they just do not have time to do otherwise. Teson provides a valuable service to Reed not provided for by the facility staff and medical caregivers.

Teson has also purchased substantial items for Reed out of the payment for her services. Teson stated that the wheelchairs provided by the facility are often the wrong size for Reed, and so Teson just went out and bought one for Reed. Teson also purchased Reed a lounge chair, which somehow got misplaced. Teson spent over a week trying to recover the chair and making phone calls trying to find out where it was. It was finally found in the facility's basement. Teson stated that it was her efforts that recovered this chair, and the staff just does not have time to devote to things like a lost chair. Teson stated that Reed's walker was also lost. For two weeks Reed did not have a walker, so Teson went out and purchased one for her.

---

1. The Contract states that Reed has a life expectancy of 11.3 years, which has not been disputed.

Reed went from 110 pounds to 98 pounds after her stroke. In addition to taking time to feed Reed, Teson uses her payment for her services to purchase, prepare and bring Reed outside food, such as mashed potatoes and gravy, Spaghettios, snacks and drinks that Reed especially likes, and takes her out to eat in order to make sure she does not keep losing weight. Teson also purchased Reed all new clothes with the remuneration she gets for her services because her old ones did not fit her anymore. Teson stated also that clothing often gets lost in nursing homes, and thus she frequently takes stock of Reed's wardrobe and buys Reed things she needs, such as shoes, socks, underwear, leggings, housecoats, gowns, and shirts.

Teson makes a special effort to take note of parties or recreational events held by the facility, so that she can make sure Reed attends. Teson stated that one time she visited, the facility was having a sing-along with music, but she discovered Reed in her room, in her bed. Teson said that when she asked the staff why they do not take Reed to these events, they stated that when they ask Reed, she says she is not sure she wants to go. Obviously the staff is not going to force Reed to go if she says she does not want to go. Teson adjusts her schedule around these events, goes to the facility, gets Reed up and takes her to these events, and joins in herself. If Teson did not do this for Reed, Teson maintains Reed would just stay in her room.

Teson stated that on days when it is warm and nice out, she takes Reed on one or two-hour drives around St. Charles, so that Reed can get out of the facility and enjoy rides around town, a service which is not provided by the facility.

One time Teson noticed a pharmacy bill that was for 90 pills for one month, when Teson knew that Reed only took one pill a day. Teson brought this discrepancy to the nursing home's attention, and they rectified the error. Teson maintains that such an error has been made more than once. One time, the morning nurse was giving Reed a pill, and the evening nurse was also giving Reed this pill, when she was only to have one a day. Teson noticed Reed was lethargic, checked into her medications, and they were able to rectify the problem.

Teson drives sixty miles round-trip three to four times per week to perform her services for Reed. Without the remuneration she receives for her services, Teson would not be able to afford the gas, not to mention the time that these trips take.

We find that these services, among others, support Reed's independence, autonomy, well-being and care in ways that the facility's services do not. They enhance Reed's life in ways that the facility does not, and are above and beyond the care provided by the facility. As such, we conclude that the services provided by Teson under the Contract constitute valuable consideration for the $11,000.00 payment made by Reed to Teson.

We note that the Division cites Section 1040.020.10.05 of its "Online" Income Maintenance Manual (IMM), for its blanket proposition that cases involving the exchange or transfer of property for lifetime care render an individual ineligible for assistance. The IMM is a publication distributed to caseworkers and to claimants for guidance in presenting and processing claims. *Couch v. Director, Missouri State Div. of Family Services,* 795 S.W.2d 91, 93 (Mo.App. W.D.1990). It reflects the policies utilized by the Division in making determinations regarding eligibility for various types of benefits, including medical assistance. *Id.* However, the IMM does not constitute a compilation of valid rules, and has no legal controlling

force. *Id., Danner v. Division of Family Services,* 772 S.W.2d 868, 871 (Mo.App. W.D.1989).

In any event, IMM Section 1040.020.25 provides that "[t]ransferred property that would cause ineligibility is presumed to have been transferred for the purpose of establishing eligibility, unless the claimant can provide convincing evidence that the transfer was made for some other purpose." Section 1040.020.30 provides that "[i]f fair and valuable consideration was received without regard to the type or value of the transferred property, the claimant is eligible on this point." In the instant case, we find that Reed received fair and valuable consideration for her payment to Teson, and thus even under the IMM, regardless of the fact that the consideration is lifetime personal care, Reed is eligible for medical assistance benefits.

The judgment is affirmed.

NANNETTE A. BAKER, P.J. and ROBERT G. DOWD, JR., J., concur.