Nellie PLUMB, Respondent,

v.

**MISSOURI DEPARTMENT OF SO-CIAL SERVICES, FAMILY SUP-PORT DIVISION, Appellant.**

No. ED 88643.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 26, 2007.

476

Elizabeth LaFlamme, St. Louis, MO, for appellant.

Michael C. Weeks, St. Charles, MO, for respondent.

## OPINION

GEORGE W. DRAPER III, Presiding Judge.

Nellie Plumb (hereinafter, "Claimant") appeals from the decision of the Missouri Department of Social Services, Family Support Division (hereinafter, "the Division") decision denying her application to increase her spouse's, Hugh Plumb (hereinafter, "Husband"), minimal monthly maintenance needs allowance (hereinafter, "MMMNA"). The Division appeals the circuit court's judgment ordering it to pay Claimant's attorney's fees in the amount of $5,500.00. We affirm the circuit court's judgment granting Husband an increase in

his MMMNA. We reverse the circuit court's judgment ordering the Division to pay Claimant's attorney's fees.

The facts are undisputed. Claimant began a period of continuous institutionalization in a nursing facility in January 2004. On July 29, 2004, Claimant applied for Medical Assistant Vendor Benefits (hereinafter, "benefits") and submitted a Declaration of the Assessment of Assets form.[1] The Division rejected her application on September 7, 2004, finding she was ineligible based upon a determination that Claimant possessed resources in excess of the maximum allowed.

Claimant requested an administrative hearing, which was held on October 12, 2004. At the hearing, the Division presented testimony from a caseworker explaining how Claimant's application and assets were analyzed and subsequently determined to exceed the maximum allowed in order to qualify for benefits.

Husband also testified at the hearing. Husband presented uncontradicted evidence as to his individual income and monthly expenses. Husband's monthly expenses totaled approximately $2,861.72 per month. Since Claimant is institutionalized in a nursing home, Husband lives alone. He testified he had shelter expenses, including a mortgage, property taxes, utilities, insurance, lawn care, and subdivision fees. Husband testified he had to incur the expense for lawn care and snow removal because he is restricted medically from performing those duties due to a heart condition. Other expenses included $400 per month for food and $100 per month for clothing.

---

1. A division of assets is performed when one spouse enters a nursing facility and the other remains in the community, allowing the spouse who has been "institutionalized" to become Medicaid eligible while alleviating the financial burden on the "community" spouse. *Gee v. Dep't of Soc. Serv.*, 189 S.W.3d 621, 622 (Mo.App. W.D.2006). *See also* Section 208.010.11 RSMo (2004)(defining "community spouse" as being the "noninstitutionalized spouse").

The largest expense Husband incurred monthly was $672.50 in medically related expenses. After Husband detailed all of his medical expenses, Claimant's attorney asked, "[I]f you were not awarded an increase to pay for those prescriptions costs[,] would they cause you a lot of financial stress?" Husband answered, "Well some way or the other I'll have to make it; I'll have to cut something out or figure some way you know I can reduce it or something." Claimant's attorney attempted to clarify whether Husband felt "a lot of financial strain," to which Husband answered, "Well no[,] some way I'll make it."

The Division issued its decision on February 16, 2005, reversing its initial decision to deny benefits. The Division awarded Claimant benefits and Husband was allowed to keep all of the couple's assets in order to attempt to increase his monthly income to meet his MMMNA. The Division recognized Husband had out-of-pocket medical expenses, health insurance premiums, medical co-payments, and other listed expenses relating to his health in the amount of $672.50 per month. However, the Division found such expenses "did not represent exceptional circumstances resulting in significant financial duress" and did not increase his MMMNA to cover those expenses.

Claimant filed a timely application for judicial review with the circuit court contesting the Division's denial of an increase in Husband's MMMNA. The circuit court heard oral argument and received written briefs on the issue. On July 27, 2006, the circuit court reversed the Division's deci-

sion denying an increase in Husband's MMMNA based upon Husband's uncontradicted testimony regarding his medical expenses. The circuit court found these expenses presented significant financial duress. Further, the circuit court ordered the Division to pay Claimant's attorney's fees in the amount of $5,500.00, pursuant to Section 536.087 RSMo (2000).[2] Claimant, as the party aggrieved by the Division's decision under review, filed the appellant's brief in this Court pursuant to Rule 84.05(e).[3]

When reviewing an administrative action, this Court examines the Division's decision, not the circuit court's judgment. *Reed v. Dep't. of Soc. Serv.*, 193 S.W.3d 839, 842 (Mo.App. E.D.2006). Further, we must defer to the Division's findings of fact and consider the evidence in the light most favorable to its decision. *Pulliam v. Dep't of Soc. Serv.*, 96 S.W.3d 904, 906 (Mo.App. W.D.2003). Section 536.140.2 mandates we examine the Division's decision to determine whether it was: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) unsupported by competent and substantial evidence upon the whole record; (4) unauthorized by law; (5) made upon unlawful procedure or without a fair trial; (6) arbitrary, capricious, or unreasonable; or (7) an abuse of discretion. When reviewing the record, we must review the evidence in the light most favorable to the agency's decision and disregard evidence that might support findings different from those of the agency. *Reed*, 193 S.W.3d at 842.

**2.** All statutory references are to RSMo (2000) unless otherwise indicated.

**3.** Rule 84.05(e) states: "If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency deci-

sion shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs. The party aggrieved by the circuit court decision shall prepare the respondent's brief and serve it in a time otherwise required for the respondent to serve briefs."

▇ Generally, we presume the agency's decision is correct. *Collins v. Dep't of Soc. Serv.*, 141 S.W.3d 501, 503 (Mo.App. S.D.2004). "However, when the agency decision involves the interpretation of law and application of the law to undisputed facts, the court must form its own independent conclusions, and is not bound by the interpretation of the agency." *Id.* at 504. Some deference, however, is appropriate when the issue involves an agency interpretation of its own regulation. *Id.*

First, Claimant argues the Division's decision denying Husband an increase in his MMMNA is unsupported by competent and substantial evidence. The Division claims Claimant failed to carry her burden that Husband's MMMNA, as determined by the Division, was insufficient and resulted in significant financial duress. Claimant argues the Division improperly held her to a higher burden of proof by requiring her to show "exceptional circumstances" resulting in significant financial duress which is not the standard codified in the Missouri regulations.

▇ In order to properly analyze the issues raised in this appeal, we must engage in an overview of the statutes and regulations governing Medicaid eligibility for institutionalized spouses. The Medicaid Act, 42 U.S.C. § 1396 *et seq.* was enacted as a jointly financed federal and state program designed to provide health care to needy individuals. *Wisconsin Dep't of Health and Family Serv. v. Blumer*, 534 U.S. 473, 479, 122 S.Ct. 962, 966, 151 L.Ed.2d 935 (2002). State participation in the program is voluntary. However, if a state elects to participate, the federal government provides funding so long as the state's plan complies with the basic federal guidelines under the Medicaid Act. 42 U.S.C. § 1396a(a)(17). *See also, Hutchings ex rel. Hutchings v. Roling*, 193 S.W.3d 334, 340 (Mo.App. E.D.2006). The

methodology utilized to determine eligibility for services by the state cannot be more restrictive than the methodology utilized by the federal government. 42 U.S.C. § 1396a(r)(2)(A). The state is permitted, however, to employ methodologies which are less restrictive than those utilized by the federal government. *Id.* Missouri has elected to participate in the federal Medicaid program. *Maples v. Dep't. of Soc. Serv.*, 11 S.W.3d 869, 872 n. 3 (Mo.App. S.D.2000).

In 1988, the federal government enacted the Medicare Catastrophic Coverage Act, Pub.L. No. 100–360 (hereinafter, "the MCCA"), which was later codified at 42 U.S.C. § 1396r–5. The objective of enacting the MCCA was described in *Maples* as follows:

> The objective of the MCCA was to protect married couples when one spouse is institutionalized in a nursing home, so that the spouse who continues to reside in the community is not impoverished and has sufficient income and resources to live independently. *See* H.R. No. 100–105(II), 100th Cong., 2d Sess. at 65 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 888. Prior to 1988, Medicaid eligibility rules required couples to deplete their combined resources before the institutionalized spouse was eligible for benefits, often leaving the community spouse financially vulnerable. The MCCA attempted to strike a balance between preventing impoverishment of the community spouse by excluding minimum amounts of resources and income for that spouse from eligibility considerations, and preventing a financially solvent institutionalized spouse from receiving Medicaid benefits by ensuring that income was not completely transferred to the community spouse.

*Maples*, 11 S.W.3d at 873 (*quoting Chambers v. Ohio Dep't of Human Serv.*, 145 F.3d 793, 798 (6th Cir.1998)).

■ Additionally, under the MCCA, a community spouse is entitled to an MMMNA. 42 U.S.C. § 1396r–5(d)(3). Under this scheme, the resources of an institutionalized spouse may be allocated to the community spouse to prevent the community spouse from becoming impoverished. The MMMNA is calculated by multiplying the federal poverty level for a couple by a percentage set by each state. *See Blumer*, 534 U.S. at 481, 122 S.Ct. at 967.

■ Missouri has codified the MCCA in Section 208.010.6 RSMo (2004) which states in pertinent part:

Beginning September 30, 1989, when determining the eligibility of institutionalized spouses, as defined in 42 U.S.C. Section 1396r–5, for medical assistance benefits as provided for in Section 208.151 and 42 U.S.C. Sections 1396a *et seq.*, the division of family services shall comply with the provisions of the federal statutes and regulations. As necessary, the division shall by rule or regulation implement the federal law and regulations which shall include but not be limited to the establishment of income and resource standards and limitations.

Pursuant to the General Assembly's directive that the Division "shall by rule or regulation implement the federal law and regulations," it promulgated regulations in connection with the MCCA which are at issue in this case. Specifically, the Division codified 13 CSR § 40–2.200(5) which provides the framework that must be followed when determining benefits eligibility of an institutionalized spouse and the community spouse's MMMNA. Pursuant to this framework, the Division evaluates the resources, income, and expenses of the couple to determine the community

spouse's required MMMNA which would avoid impoverishing the community spouse. The Division also seeks to safeguard against "a financially solvent institutionalized spouse from receiving Medicaid benefits by ensuring that income was not completely transferred to that community spouse." *See Maples*, 11 S.W.3d at 873.

An institutionalized spouse is permitted to transfer income to the community spouse if the community spouse's income from outside sources is insufficient to meet his or her MMMNA. 42 U.S.C. § 1396r–5(d)(1)(B). If this transferred income is insufficient to reach the MMMNA, the community spouse may then apply for an increase in his or her resource allowance to an amount adequate to fund the community spouse's MMMNA. 42 U.S.C. § 1396r–5(2)(2)(C).

The institutionalized spouse or community spouse is entitled to a fair hearing if either of them is dissatisfied with a determination of, *inter alia*, the community spouse's MMMNA. 42 U.S.C. § 1396r–5(e)(2); *See also*, 13 CSR § 40–2.200(6). Federal law 42 U.S.C. § 1396r–5(e)(2)(B) states:

If either such spouse establishes that the community spouse needs income, above the level otherwise provided by the [MMMNA], *due to exceptional circumstances resulting in significant financial duress*, there shall be substituted, for the [MMMNA] in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary. (emphasis added).

Moreover, Missouri's regulation, codified in 13 CSR § 40–2.200(5)(A)(6), states: "If either spouse establishes in a fair hearing that the allowance as determined by the Division of Family Services is *insufficient (resulting in significant financial duress)*,

an adequate amount may be substituted." (emphasis added).

Claimant now argues the Division improperly held her to a higher burden of proof by requiring her to show "exceptional circumstances" resulting in significant financial duress which is not the standard codified in the Missouri regulations. Claimant argues the evidence presented as to Husband's unreimbursed medical expenses meets the Missouri definition of "significant financial duress" without a need to show "exceptional circumstances." We agree.

This is an issue of first impression, in that no Missouri case has analyzed this regulation or determined what evidence would rise to the level of "significant financial duress" warranting an increase in a community spouse's MMMNA. As such, we turn to other jurisdictions for guidance.

Pennsylvania has addressed a factually similar situation. In *Davis v. Pennsylvania Dep't of Pub. Welfare*, 776 A.2d 1026 (Pa.Cmwlth.2001), a hearing officer denied a community spouse's request to revise her MMMNA finding she failed to demonstrate the requisite "exceptional circumstances causing significant financial duress." *Id.* at 1027. The community spouse presented undisputed evidence of unreimbursed medical expenses, totaling approximately $5,000.00. *Id.* The hearing officer determined that "considerable expenses are not necessarily the equivalent of exceptional circumstances" because an exceptional circumstance "would necessarily be something the Legislature and Department would not consider usual for a spouse residing in the community." *Id.* at 1029. The community spouse appealed.

The Pennsylvania Commonwealth Court vacated the hearing officer's decision and remanded the case for further findings. *Id.* at 1026. The Court held the hearing officer improperly interpreted the relevant provisions of the Pennsylvania Code of Regulations, which mirrors the more restrictive language used in 42 U.S.C. § 1396r–5(e)(2)(B). The Pennsylvania Code of Regulations states the community spouse's MMMNA may exceed the amount determined when "either spouse establishes that the community spouse needs income above the standard due to *exceptional circumstances resulting in significant financial duress.*" *Id.* at 1028; 55 Pa.Code § 181.452(d)(2)(ix) (emphasis added). The Court stated, "the hearing officer mistakenly understood his task to be determining whether an expense was 'exceptional' or 'ordinary;' that is, he required the expense itself to be exceptional, rather than determining whether or not the expense involved presented exceptional demands on the resources of this particular community spouse." *Id.* at 1029.

The Court found the hearing officer's interpretation was contrary to the letter and spirit of the Pennsylvania Code. *Id.* The Court determined the language therein "does not require that the expenses themselves be exceptional, but rather the circumstances and the necessity of the expenses be exceptional." *Id.* at 1030. The Court recognized because the intent of the MCCA was to prevent impoverishment of the community spouse, application of the "exceptional circumstances" standard was consistent with the goal of enabling the community spouse to remain in the community. *Id.* at 1030. Thus, the Court ordered the case remanded, stating, "To fail to ease the financial burden of a community spouse, and to deny additional support in the face of exceptional circumstances, would be an affront to the conscience of the court, and would certainly very soon require the community spouse herself to become a public charge." *Id.*

▮▮▮ We find the reasoning in *Davis* persuasive and apply it here. In the case

at bar, the Division's decision is devoid of any explanation to support the reasoning behind its decision that Husband's unreimbursed medical expenses did not result in significant financial hardship. It is undisputed the level of Husband's unreimbursed medical expenses amounted to forty-two percent of his total MMMNA. The plain language of 13 CSR § 40–2.200(5)(A)(6) does not require a claimant to prove exceptional circumstances in order to receive an increase in his or her MMMNA in Missouri, only significant financial duress. An expense which amounts to almost half of a community spouse's MMMNA which is meant to cover basic expenses, presents significant financial duress. Therefore, the Division's determination disallowing an increase in Husband's MMMNA was unsupported by the uncontradicted evidence presented at the hearing. We affirm the circuit court's judgment granting Husband an increase in his MMMNA.

Second, Claimant argues the circuit court's award of attorney's fees in the amount of $5,500.00 was proper. The Division, disagrees, arguing the circuit court lacked jurisdiction to award fees. The Division offers several reasons supporting this allegation: (1) the hearing was not an "agency proceeding" in that the Division was not represented by counsel at the hearing and it involved a determination of the eligibility or entitlement to a monetary benefit or its equivalent; (2) the Division's determination to deny Husband an additional increase in his MMMNA was "substantially justified;" and (3) the circuit court erred in awarding fees in excess of the statutory minimum rate in that it failed to make specific written findings that a "special factor" existed to justify such an award. We need only address the Division's first argument as it is dispositive.

"We may modify, reverse, or reverse and remand a trial court's determination of attorney's fees under Section 536.087 if the award, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, was made contrary to law, or was made in excess of the court's jurisdiction." Section 536.087.7; *Hutchings*, 193 S.W.3d at 346. Our determination must be made solely upon the record made before the agency or the trial court. *Id.* The evidence is viewed in the light most favorable to the judgment. *Id.*

Section 536.087.1 states:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the [S]tate, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the [S]tate was substantially justified or that special circumstances make an award unjust.

Initially, the Division takes issue with the classification of the hearing as an "agency proceeding." An "agency proceeding" is defined in Section 536.085(1) as "a contested case ... in which the [S]tate is represented by counsel, but does not include proceedings for determining the eligibility or entitlement of an individual to a monetary benefit or its equivalent...."

■■■ Here, it is undisputed this was a contested case. We reject the Division's argument that it was not represented by counsel as a grounds upon which to preclude attorney's fees. "An 'agency proceeding' include[s] one that [begins] as an administrative proceeding in which the agency was not represented by counsel if there [is] a subsequent circuit court proceeding that [arises] out of the agency proceeding where the agency was so rep-

resented." *Washington v. Jones,* 154 S.W.3d 346, 350 (Mo.App. E.D.2004)(*citing State, Div. of Child Support v. Grimes,* 998 S.W.2d 807, 810 (Mo.App.E.D.1999)). Further, *Hutchings* held such an argument is moot when the agency subsequently appears by counsel in the circuit court review proceeding to defend its action taken at the initial hearing. *Id.,* 193 S.W.3d at 347.

The Division next argues that its adjudication of Claimant's request to increase Husband's MMMNA was a "proceeding for determining the eligibility or entitlement for an individual to a monetary benefit or its equivalent." In *Hyde v. Dept. of Mental Health,* 200 S.W.3d 73 (Mo.App. W.D.2006), a mother sought to elevate her daughter's status on a Medicaid waiver program waiting list. The mother successfully obtained a change in status resulting in her daughter being removed from the waiting list and receiving immediate benefits pursuant to the waiver program. *Id.* at 74. Subsequently, the mother filed an application seeking attorney's fees pursuant to Section 536.087. *Id.* at 75. The department denied her request, and the circuit court affirmed that decision, finding it lacked jurisdiction to award fees because the underlying proceeding did not meet the definition of "agency proceeding" pursuant to Section 536.085(1). *Id.* Mother appealed.

The Western District construed Section 536.087 and 536.085(1) reasoning:

Relying on a standard dictionary, the Supreme Court declared, in *State v. Barnes,* 942 S.W.2d 362, 366 (Mo. banc 1997), that the plain and ordinary meaning of "benefit" is "a 'payment' or 'gift' or 'a natural advantage.'" Hence, by using "monetary" in Section 536.087 to modify "benefits," the General Assembly restricted the statute's scope to payments or gifts of money or its equivalent. A standard dictionary definition of

"equivalent" is "like in signification or import ...: SYNONYMOUS[;] equal in value: COMPENSATIVE, CONVERTIBLE ... [;] corresponding or virtually identical esp[ecially] in effect or function ...: TANTAMOUNT[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 769 (1993).

[The mother] did not seek a payment or gift of money or its equivalent for her daughter. She sought status. The division had already agreed to give [the mother] the equivalent of a monetary benefit: in-home services for her daughter. She wanted the division to declare that her daughter's case met emergency-need criteria so that delivery of benefits to her daughter would not rest on availability of funds distributed according to priorities. Although she succeeded in obtaining a change in status of her daughter's case, she did not receive any more benefits for her daughter than she was receiving before she asked for reconsideration of the Medicaid waiver.

*Id.* at 76. Thus, the Western District concluded the mother was not seeking a monetary benefit or its equivalent, and as a result, met the definition of "agency proceeding" entitling her to an award of attorney's fees. *Id.*

Subsequently, in *Braddock v. Dep't of Mental Health,* 200 S.W.3d 78 (Mo.App. W.D.2006), the Western District distinguished the holding in *Hyde.* In *Braddock,* parents requested Medicaid waiver funding to improve wheelchair accessibility for their son due to his diagnosis of cerebral palsy. *Id.* at 79. The department granted some of the modifications requested; however, the parents sought an administrative hearing to receive funding for all of the modifications. *Id.* After the administrative hearing, the appeals referee granted the

parents all of the modifications requested and ordered funding be granted accordingly. *Id.*

The parents then filed an application for an award of attorney's fees pursuant to Section 536.087.1. *Id.* This application was denied by the appeals referee based upon its finding that the department had "a reasonable basis both in fact and law" for denying the parents' initial application for funding. *Id.* at 80. The parents appealed to the circuit court, who also denied their application for attorney's fees. The circuit court determined the parents were not entitled to receive fees because Section 536.085(1) precludes an award in any agency proceeding that determines eligibility for a monetary benefit or its equivalent. *Id.* The parents appealed.

The Western District, after discussing and subsequently distinguishing *Hyde,* held the administrative proceeding involved the determination of a monetary benefit, and not a mere change in status. *Id.* at 82. "Their administrative claim resulted in the payment of monetary benefits that the family otherwise would not have received." *Id.* Thus, "[t]his type of claim is expressly excluded from the definition of an agency proceeding in Section 536.085(1) and, therefore, precluded the [parents] from recovering their attorney's fees under Section 536.087.1." *Id.*

■ We find the case at bar more akin to *Braddock* than *Hyde.* This case differs from *Hyde* in that Claimant sought an increase in Husband's MMMNA, not a mere change in his benefit status. The circuit court's judgment increasing Husband's MMMNA resulted in the payment of monetary benefits that he would not have received otherwise, similar to the family in *Braddock.* Since this is the type of claim expressly excluded from the definition of an "agency proceeding" in Section 536.085(1), Claimant is precluded from re-

covering attorney's fees pursuant to Section 536.087(1).

The circuit court's judgment is affirmed with respect to the increase in Husband's MMMNA. The judgment is reversed regarding the award of attorney's fees.

GARY M. GAERTNER, SR. and ROBERT G. DOWD, JR., JJ., concur.